PD-1362-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/19/2015 4:19:13 PM
Accepted 10/19/2015 4:49:13 PM
ABEL ACOSTA
CLERK

No. _____

# COURT OF CRIMINAL APPEALS
# OF TEXAS

**The State of Texas,**
Appellant

v.

**Jose Ruiz**

from the Court of Appeals for the
Thirteenth Judicial District at Corpus Christi

13-13-00507-CR

---

## STATE'S PETITION FOR DISCRETIONARY REVIEW

---

An appeal from the 25th Judicial District Court, Gonzales County, Texas
The Honorable William D. Old III., Judge Presiding

FILED IN
COURT OF CRIMINAL APPEALS

October 19, 2015

ABEL ACOSTA, CLERK

**Paul Watkins**
County Attorney
Gonzales County, Texas

**Keri L. Miller**
First Assistant County Attorney
415 Saint Louis Street
Gonzales, TX 78629
State Bar No. 24051960
(830) 672-6527  FAX (830) 672-5868
kmiller@co.gonzales.tx.us

## Identity of Judge, Parties, and Counsel

**Trial Court**............................**The Honorable William D. Old, III.**

Presiding Judge
25th Judicial District Court
Gonzales County, TX

**Appellant** .............................**The State of Texas**

**Paul Watkins**
County Attorney

**Keri L. Miller**
First Assistant County Attorney
TRIAL AND APPELLATE COUNSEL
Gonzales County Attorney's Office
415 Saint Louis Street
Gonzales, Texas 78629

**Appellee** ..............................**Jose Ruiz**

**Mark Symms**
TRIAL AND APPELLATE COUNSEL
417 Saint George Street, Second Floor
Gonzales, Texas 78629

# Table of Contents

Identity of Judge, Parties, and Counsel ....................................................i

Index of Authorities.......................................................................iv

Statement Regarding Oral Argument .......................................................v

Statement of the Case ....................................................................v

Statement of Procedural History ...........................................................v

Grounds for Review ......................................................................1

Issue One

> Is it unreasonable under the Fourth Amendment for an officer to rely on a driver's implied consent to a blood draw when the driver was involved in an accident, there is probable cause to believe he is intoxicated, and where the driver's own unconsciousness prevents the officer from effectively obtaining the driver's actual consent?

Issue Two

> Were there sufficient exigent circumstances to justify the warrantless blood draw where (1) officers were occupied with the accident investigation (2) the defendant had fled the scene and remained unidentified for some time, and (3) where there were few officers or magistrates on hand to expeditiously obtain a warrant?

The Facts and Issues Argued Below.......................................................1

Argument...............................................................................9

I.  The blood results should not have been suppressed...........................9

    A. Reasonable under the Fourth Amendment ...................................10

B. Sufficient Exigent Circumstances Existed ...................................... 11

Prayer for Relief ....................................................................... 13

Certificate of Service ................................................................ 13

Certificate of Compliance ......................................................... 14

Appendix A: Majority Opinion of the Court of Appeals

Appendix B: Dissenting Opinion by Justice Perkes

# Index of Authorities

## Cases

*Cole v. State*, No. PD-0635-14
(granted Apr. 22, 2015)..................................................................................10

*Holidy v. State*, No. PD-0622-14
(granted Aug. 20, 2014) ................................................................................10

*Missouri v. McNeely*, 133 S. Ct. 1552
(2013)........................................................................................... v, 1, 5, 11

*Parker v. State,* 306 S.W.3d 593 (Tex. Crim. App 2006).........................11

*Reeder v. State*, No. 0601-14
(granted Aug. 20, 2014) ................................................................................10

*State v. Ruiz,* No. 13-13-0057-CR, 2015 Tex. App. LEXIS 8961
(Tex. App.--Corpus Christi August 27, 2015)...................... v, 6, 7, 8, 11

*State v. Smith*, No. PD-1615-14
(granted Feb. 11, 2015)..................................................................................10

*State v. Villarreal*, PD-0306-14, 2014 WL 6734178
(Tex. Crim. App. Nov. 26, 2014), *reh'g granted* (Feb. 25, 2015)............10

## Statutes, Codes, and Rules

Tex. Transp. Code § 724.011(a)...............................................................6

Tex. Transp. Code § 724.014(a)........................................ 6, 7, 9, 10, 11

Tex. R. App. P. 66.3(b)...............................................................................9

Tex. R. App. P. 66.3(d)...............................................................................9

Tex. R. App. P. 66.3(e)...............................................................................9

Tex. R. App. P. 68.2(a)..............................................................................vi

To the Honorable Court of Criminal Appeals of Texas:

## Statement Regarding Oral Argument

The State respectfully requests oral argument. The particular issue presented in the State's first ground for review has not yet been decided by this Court post *McNeely*. In addition, the issue of exigent circumstances will likely turn on a number of particular facts. Oral argument is best suited to determine those factual assertions and their importance to determine whether exigent circumstances existed.

## Statement of the Case

Jose Ruiz was indicted for driving while intoxicated, third or more. (Cl. R. vol. 1 of 1, at 3-4). Ruiz filed a motion to suppress the results of his blood test based on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). (Ct. R. vol. 1 of 1 at 4-23). The trial court granted the motion, and the State appealed. (Cl. R. vol. 1 of 1, at 16-18).

## Statement of Procedural History

The court of appeals handed down its opinion on August 27, 2015. *State v. Ruiz,* No. 13-13-00507-CR, 2015 Tex. App. LEXIS 8961 (Tex. App.—Corpus Christi August 27, 2015) (designated for publication).

The State timely filed a motion for en banc reconsideration on September 9, 2015, which was denied September 21, 2015. This petition is thus timely filed on or before October 21, 2015. Tex. R. App. P. 68.2(a).

<u>**Grounds for Review**</u>

<u>**Issue One**</u>

> **Is it unreasonable under the Fourth Amendment for an officer to rely on a driver's implied consent to a blood draw when the driver was involved in an accident, there is probable cause to believe he is intoxicated, and where the driver's own unconsciousness prevents the officer from effectively obtaining the driver's actual consent?**

<u>**Issue Two**</u>

> **Were there sufficient exigent circumstances to justify the warrantless blood draw where (1) officers were occupied with the accident investigation, (2) the defendant had fled the scene and remained unidentified for some time, and (3) where there were few officers or magistrates on hand to expeditiously obtain a warrant?**

<u>**The Facts and Issues Argued Below**</u>

## I.  The offense

In September 2012—six months before the Supreme Court's April 2013 decision in *Missouri v. McNeely*—Sergeant Bethany McBride responded to a two vehicle accident around midnight. (Ct. R. vol. 1 of 1, at 7).  When Sergeant McBride arrived at the scene she observed a tan Lincoln Navigator had collided with a tan Pontiac. (Ct. R. vol. 1 of 1, at

1

7, 13). The driver of the Pontiac remained on the scene but the driver of the Lincoln fled. (Ct. R. vol. 1 of 1, at 7). As Sergeant McBride investigated the scene two witnesses approached her and gave her a description of the driver of the Lincoln and stated that the driver had run behind a nearby carwash. (Ct. R. vol. 1 of 1, at 7). Sergeant McBride looked in the Lincoln to determine the identity of the driver and located insurance paperwork that belonged to Ruiz. (Ct. R. vol. 1 of 1, at 7-8). Sergeant McBride also ran the license plate of the Lincoln which came back to Ruiz. (Ct. R. vol. 1 of 1, at 8). While inside the vehicle Sergeant McBride observed several Bud Light cans in the front seat area. (Ct. R. vol. 1 of 1, at 8).

After searching the area where the witnesses said the driver of the Lincoln had fled, officers were able to locate Ruiz in a field behind the car wash. (Ct. R. vol. 1 of 1, at 8-9). Ruiz was unresponsive, and it took several officers to carry him to the patrol unit. (Ct. R. vol. 1 of 1, at 9). Sergeant McBride observed the very strong odor of alcoholic beverages coming from Ruiz. (Ct. R. vol. 1 of 1, at 9-10). Sergeant McBride did not observe any injuries on Ruiz and determined that he was unresponsive due to the amount of alcohol in his system. (Ct. R. vol. 1 of 1, at 10-11).

2

EMS arrived on scene to treat Ruiz. (Ct. R. vol. 1 of 1, at 11). EMS performed several sternum rubs to try and get Ruiz to be responsive, but Ruiz never responded. (Ct. R. vol. 1 of 1, at 11). EMS also checked Ruiz's blood pressure and based on Ruiz's condition, EMS transported Ruiz to the hospital for treatment. (Ct. R. vol. 1 of 1, at 11).

Sergeant McBride went to the hospital and placed Ruiz under arrest for driving while intoxicated. (Ct. R. vol. 1 of 1, at 12). When Sergeant McBride ran Ruiz's criminal history she discovered Ruiz had four convictions for driving while intoxicated. (Ct. R. vol. 1 of 1, at 17). Sergeant McBride prepared the necessary paperwork and a qualified lab technician with the hospital drew Ruiz's blood. (Ct. R. vol. 1 of 1, at 12). Ruiz remained unresponsive the entire time. (Ct. R. vol. 1 of 1, at 12-13).

Sergeant McBride explained that it would have been impractical to secure a warrant because there was no magistrate available at that time and it would have been difficult to find one at that time on a weekend. (Ct. R. vol. 1 of 1, at 15, 18). Sergeant McBride also was one of only two officers on duty for the Gonzales Police Department at the time, and it would have been impracticable to remove one officer from

duty to secure the warrant. (Ct. R. vol. 1 of 1, at 15). Sergeant McBride explained that at the time there were no procedures in place to obtain a search warrant and if she were able to obtain a search warrant it would have taken probably two to three hours to write the affidavit and then she would have had to drive the search warrant to the magistrate's house, if she could find one, to sign the warrant, and return to the hospital to execute the warrant. (Ct. R. vol. 1 of 1, at 15, 18, 19).

Sergeant McBride explained that because Ruiz was involved in an accident, which had to be investigated, Ruiz fled the scene of that accident, Sergeant McBride had to perform an investigation to determine the identity of the driver and his location, and with Ruiz being found unresponsive in a field a distance away from the accident, necessitating his treatment by EMS, the investigation was prolonged in this case beyond a normal driving while intoxicated case. (Ct. R. vol. 1 of 1, at 17-20). Sergeant McBride knew that during this prolonged process the alcohol in Ruiz's bloodstream was dissipating. (Ct. R. vol. 1 of 1, at 19).

## II. The trial court

Ruiz moved to suppress his blood-test results under *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). (Ct. R. vol. 1 of 1, at 4-5). At the suppression hearing, the trial court took the matter under advisement. (Ct. R. vol. 1 of 1, at 22). At the request of the State the trial court filed findings of fact and conclusions of law. The trial court found Sergeant McBride's testimony credible in all respects. (Cl. R. Supp. vol. 1 of 1, at 11). The trial court further found that Ruiz was unconscious at the time of the blood draw and did not revoke his implied consent to the blood draw. (Cl. R. Supp. vol. 1 of 1, at 11, 12). The trial court found itself bound by *McNeely,* and granted the motion to suppress. (Cl. R. Supp. vol. 1 of 1, at 11). The trial court concluded there were no exigent circumstances which justified the blood draw. (Cl. R. Supp. vol. 1 of 1, at 12).

## III. The court of appeals

In its brief to the Thirteenth District Court of Appeals in Corpus Christi, the State argued that Ruiz's warrantless blood draw was justified under the Fourth Amendment because Ruiz, had consented to the blood draw. Ruiz was deemed to have consented to the blood draw

and throughout Sergeant McBride's encounter with Ruiz, he was unconscious and therefore Ruiz's consent to the blood draw was never revoked. Tex. Transp. Code Ann. §§ 724.011 (West), 724.014 (West). In addition, the State argued that even if Ruiz did not consent to the blood draw there were sufficient exigent circumstances that existed which justified the warrantless blood draw.

The majority opinion held that Ruiz never gave his free and voluntary consent to the blood draw because he was unconscious and thus was unable to give his consent freely and voluntarily or have the opportunity to revoke such consent. *Ruiz,* 2015 Tex. App. LEXIS 8961 at 8-9. The majority reasoned that because the implied consent statutory scheme is premised on consent, Ruiz had to first consent to the blood draw to trigger the applicable provisions of Chapter 724 of the transportation code. *Ruiz,* 2015 Tex. App. LEXIS 8961 at 12.

Justice Perkes in his dissenting opinion held that the implied consent laws in this instance do not offend the Fourth Amendment and thus the blood sample was obtained legally. *Ruiz,* 2015 Tex. App. LEXIS 8961 at 25. Justice Perkes reasoned that "Ruiz was precisely the type of person—a person incapable of refusal—contemplated by

6

section 724.014." *Ruiz,* 2015 Tex. App. LEXIS 8961 at 23. "This factual scenario is the type of situation where implied consent makes perfect sense. To hold otherwise would render ineffective the entire implied consent statutory scheme." *Ruiz,* 2015 Tex. App. LEXIS 8961 at 24. "The majority states that it refuses to read the implied consent statute 'expansively,' but then requires the State contrary to the plain language of the statute, to prove that the consent was freely and voluntarily given. Such a reading encumbers the State with the impossible task of obtaining consent freely and voluntarily from an unconscious person. While the majority correctly states that consent must be freely and voluntarily given, the cases it relies on are factually distinguishable." *Ruiz,* 2015 Tex. App. LEXIS 8968 at 24.

The majority opinion also concluded that there were no exigent circumstances which justified the warrantless withdrawal of Ruiz's blood, reasoning that "the State produced no evidence to show that the destruction of evidence was imminent, how it was deprived of an opportunity to obtain reliable evidence within a timeframe, or how a more expeditious process was not available to locate a magistrate and obtain a warrant from the magistrate through alternative means such

as via telephone rather than physically driving to the magistrate's home." *Ruiz,* 2015 Tex. App. LEXIS 8968 at 18.

Justice Perkes disagreed with the majority's conclusion that no exigent circumstances existed, holding that "*McNeely* supports a finding of exigency sufficient to justify the warrantless blood test in this case. After arriving at the scene of an accident in the middle of the night, Sergeant McBride was required not only to investigate the scene of the accident but also required to find Ruiz and identify him as a driver involved in the accident. Additionally, when Sergeant McBride was finally able to locate Ruiz, he was unconscious and in need of medical attention. Sergeant McBride testified that no magistrate was on duty, and that it would have taken time to find one, drive the warrant to their residence to have it signed, then return to the hospital to serve the warrant. She estimated that obtaining a warrant would have taken two or three hours and it was impractical to remove one of the only two officers on duty that night in order to prepare a search warrant affidavit. Under these circumstances, it was reasonable for Sergeant McBride to believe that she was facing imminent destruction of evidence." *Ruiz,* 2015 Tex. App. LEXIS 8968 at 26-27.

## Argument

## I. The blood results should not have been suppressed

This Court should grant review because the court of appeals decided an important question of state and federal law that is unsettled and should be settled by this Court. *See* Tex. R. App. P. 66.3(b). That question is whether warrantless blood draws conducted under Transportation Code § 724.014 are reasonable under the Fourth Amendment. In addition, the court of appeals has misconstrued a statute by ignoring the plain meaning of 724.014, by requiring the State to prove free and voluntary consent from an unconscious individual where the statute unequivocally establishes a presumption of consent. *See* Tex. R. App. P. 66.3(d). Furthermore, the justices of the Thirteenth Court of Appeals have disagreed on two material questions of law necessary to the court's decision, namely, (1) that implying consent under § 724.014 for an unconscious driver who has never revoked his consent is a reasonable exception to the Fourth Amendment's warrant requirement, and (2) whether exigent circumstances existed to justify the warrantless blood draw. *See* Tex. R. App. P. 66.3(e).

## A. Reasonable under the Fourth Amendment

Like numerous other cases, the issue in this case revolves around whether a blood draw conducted pursuant to the implied consent provisions of Chapter 724 of the Transportation Code is reasonable under the Fourth Amendment. Because this Court has already granted review to decide a similar issue, whether the mandatory blood draw provisions are reasonable under the Fourth Amendment, in numerous other pending cases, review is also warranted in the instant case. *See, e.g., State v. Villarreal,* PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. Nov. 26, 2014), *reh'g granted* (Feb. 25, 2015); *Holidy v. State*, No. PD-0622-14 (granted Aug. 20, 2014); *Reeder v. State*, No. 0601-14 (granted Aug. 20, 2014); *State v. Smith*, No. PD-1615-14 (granted Feb. 11, 2015); *Cole v. State*, No. PD-0635-14 (granted Apr. 22, 2015).

In addition, the majority's opinion ignored the plain meaning of the section 724.014 by holding that the State must first obtain the voluntary consent of an unconscious individual where the statute unequivocally establishes that a presumption of consent exists. Tex. Transp. Code Ann § 724.014 (West). Because there is no guidance, post

10

*McNeely,* on the issue of whether withdrawing blood of an unconscious person pursuant to §724.014, is reasonable under the Fourth Amendment, and the majority and the dissent strongly disagree on the issue, review is warranted in this case.

## B. Sufficient Exigent Circumstances Existed

The majority opinion fails to take into account that the existence of exigent circumstances is determined based upon the *information known to the officer* at the time of the search. *Parker v. State,* 206 S.W.3d 593, 600 (Tex. Crim. App. 2006)(emphasis added). The majority opinion ignored the testimony establishing what was known to Sergeant McBride at the time of the warrantless blood draw and instead focused on what was unknown from the testimony at the motion to suppress. *Ruiz,* 2015 Tex. App. LEXIS 8968 at 18. At the time of the warrantless blood draw, Sergeant McBride knew: (1) Ruiz's blood alcohol content was dissipating; (2) she had the obligation to investigate the scene of an accident; (3) she had to identify Ruiz as the driver of the vehicle after he fled the scene of the accident; (4) she had to find Ruiz who witnesses stated had run behind a carwash; (5) once she found Ruiz she had to call for EMS, wait on their arrival and their treatment of Ruiz; (6) Ruiz

11

after being assessed and treated at the scene required transportation to the hospital; (7) finding a magistrate would be difficult; (8) if she could find a magistrate she would have to drive the search warrant to his house, because at the time Gonzales did not have any policies in place for securing a search warrant in a more expeditious manner; (9) it was impracticable to remove one of only two officers on duty that night to spend two to three hours writing a search warrant affidavit, finding a magistrate, if she could, driving to the magistrate's house to get it signed, and then returning to the hospital to execute the warrant. (Ct. R. vol. 1 of 1, at 7-11, 45-18).

As the dissent correctly pointed out when focusing on the circumstances known to Sergeant McBride, it was reasonable for her to believe that she was facing imminent destruction of evidence.

The majority opinion fails to take into account what was known to Sergeant McBride at the time of the warrantless blood draw in its determination of the existence of exigent circumstances justifying the warrantless withdrawal of Ruiz's blood and therefore, review should be granted in this case.

## Prayer for Relief

Wherefore, the State of Texas prays that this Court will grant the petition and ultimately reverse the decision of the court of appeals.

Respectfully submitted,

**Paul Watkins**
County Attorney
Gonzales County, Texas

/s/ Keri L. Miller
**Keri L. Miller**
First Assistant County Attorney
415 Saint Louis Street
State Bar No. 24051960
kmiller@co.gonzales.tx.us
(830) 672-6527
FAX (830) 672-5868

## Certificate of Service

The State has e-served Mark Symms, counsel for Jose Ruiz, through the eFileTexas.gov filing system and sent a copy to The Honorable Lisa McMinn, State Prosecuting Attorney, on this, the 19th day of October, 2015.

/s/ Keri L. Miller

## Certificate of Compliance

This petition for discretionary review complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this petition, the undersigned attorney certifies that this document contains 2402 words, exclusive of the sections exempted by Rule 9.4(i)(1).

Keri L. Miler
Assistant County Attorney

APPENDIX A


Majority Opinion of the Court of Appeals
August 27, 2015



NUMBER 13-13-00507-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

JOSE RUIZ,                                                             Appellee.

On appeal from the 25th District Court
of Gonzales County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Perkes**
**Opinion by Justice Benavides**

In this appeal, the State challenges the trial court's granting of appellee, Jose Ruiz's, motion to suppress blood alcohol test results that police seized following his arrest for driving while intoxicated.    We affirm.

## I. BACKGROUND

On September 9, 2012, Gonzales Police Sergeant Bethany McBride arrived on the scene of an accident shortly after midnight in Gonzales County to discover a collision between a Lincoln Navigator and a Pontiac. Witnesses at the scene told Sergeant McBride that the driver of the Navigator, later identified as Ruiz, had fled the scene and had run behind a car wash.

Sergeant McBride looked into the Navigator and found insurance paperwork in Ruiz's name, as well as "several Bud Light . . . cans, that [had] exploded in the [front] seat." Other officers later located Ruiz in a field behind the car wash that witnesses had described earlier. Sergeant McBride described Ruiz as "unresponsive" that night and further observed that he "couldn't open his eyes." Additionally, his body emitted a "strong odor of [alcohol]." According to Sergeant McBride, Ruiz did not appear to be injured, but was "just unresponsive due to the amount of alcohol in his system."

Emergency medical personnel eventually arrived, and also attempted to elicit responses from Ruiz by performing several sternum rubs, but such tests were unsuccessful. As a result, Ruiz was taken by ambulance to Gonzales Memorial Hospital. At the hospital, Ruiz remained unresponsive. Sergeant McBride testified that she had enough probable cause to place Ruiz under arrest for driving while intoxicated and completed paperwork at the hospital for lab technicians to administer a blood draw. Sergeant McBride also discovered that Ruiz had four prior convictions for driving while intoxicated. Once Ruiz's blood was drawn, Sergeant McBride took custody of Ruiz's blood evidence and returned to the Gonzales Police Station.

On cross examination, Sergeant McBride testified that it would have been unreasonable to obtain a search warrant of Ruiz's blood for a number of reasons, namely: (1) it was difficult to find a magistrate or judge to sign a search warrant that late at night, and she was required to drive to the judge's house to retrieve the warrant; and (2) only two officers were on duty that night, and Sergeant McBride did not want to take one of the officers off duty to work on the warrant. According to Sergeant McBride, she estimated that it would have taken her "about two or three hours" to obtain a search warrant that night. Sergeant McBride also admitted that at the time, no procedures were in place to obtain search warrants for blood draws. The record also shows that Ruiz was admitted to the hospital overnight due to his sustained unconsciousness and did not appear to be a flight risk.

At the suppression hearing, the State stipulated that it had conducted a warrantless blood draw, but argued that the blood draw was nevertheless valid because: (1) section 724.014 of the transportation code provides implied consent of an accused who is unconscious, and (2) exigent circumstances existed. The trial court granted Ruiz's motion to suppress, and issued the following relevant findings of fact and conclusions of law:

**Findings of Fact**

1.     [Ruiz] was involved in an accident late at night to early morning on September 9, 2013. Gonzales Police Department Sgt. Bethany McBride responded.

. . . .

4.     Following [Ruiz's] arrest by McBride the attending physicians indicated they wanted to keep [Ruiz] overnight.

3

5.      There was no concern that [Ruiz] would flee from the hospital.

6.      A warrant could have been obtained within 2 to 3 hours.

. . . .

8.      McBride performed a criminal history check on [Ruiz] and found four previous convictions for DWI. Relying on Texas Penal Code 724.012 and 724.014 McBride ordered the blood draw from [Ruiz].

9.      [Ruiz] remained in custodial arrest during the time the blood was drawn.

10.     The court finds Officer McBride's testimony to be credible in all respects.

### Conclusions of Law

1.      The court takes judicial notice of all statutes promulgated under [the] Texas Transportation Code and in effect during all times relevant to this case.

2.      The court finds that it is bound by *Missouri v. McNeely*, 133 S.Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013).

3.      [Ruiz] did not revoke his consent to a blood draw under section 724.011 of the Texas Transportation Code.

4.      No exigent circumstances existed in this case.

5.      Believing itself to be bound by *McNeely*, the court granted the motion to suppress.

6.      If exigent circumstances existed the court believes *McNeely* would not apply and the motion to suppress would be denied.

This appeal followed.

## II.      MOTION TO SUPPRESS

By its sole issue, the State contends that the trial court erred by granting Ruiz's motion to suppress because he impliedly consented to the blood draw, and even if he did not consent, there were sufficient exigent circumstances to justify the warrantless blood

4

draw.

## A.    Applicable Law and Standard of Review

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This initial burden is satisfied by establishing that a search occurred without a warrant. *Id.* Once a defendant makes this showing, the burden of proof shifts to the State where it is required to establish that the search was conducted pursuant to a warrant or under a reasonable exception. *Id.* (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)).

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record. But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo. *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

5

**B.     Discussion**

In this case, the State stipulated that Ruiz's blood was drawn without a warrant. Therefore, the burden shifted to the State to establish that the search was reasonable. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.   *Missouri v. McNeely*, 133 S.Ct. 1552, 1563 (2013).

To meet its burden that the warrantless search in this case was reasonable, the State asserts that Texas's implied consent law, *see* TEX. TRANSP. CODE ANN. §§ 724.011; 724.014 (West, Westlaw through Ch. 46 2015 R.S.), established Ruiz's consent to the blood draw; and in the alternative, exigent circumstances existed to justify the taking of Ruiz's blood.   We will analyze each argument below.

**1.  Implied Consent**

Section 724.011(a) of the transportation code implies consent for an individual who has been arrested for driving while intoxicated.   *See id.* § 724.011(a); *see State v. Villarreal*, No. 13–13–00253–CR, __ S.W.3d __, __, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014) *aff'd*, No. PD–0306–14, 2014 WL 6734178 at *21 (Tex. Crim. App. Nov. 26, 2014) *reh'g granted*, (Feb. 25, 2015).   This implied consent, however, may be revoked, absent certain exceptions. *See id.* § 724.013 ("Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.").   Thus, if a drunk-driving suspect refuses to submit to the taking of a specimen, police are prohibited from doing so without a warrant.   *Id.*   However, if a drunk-driving suspect is "dead, unconscious, or otherwise incapable of refusal," implied consent is considered "not to

6

have [been withdrawn] as provided by section 724.011." *See id.* § 724.014(a). This implied-consent law framework, however "does not give officers the ability to forcibly obtain blood samples from anyone arrested for [driving while intoxicated]," but instead "gives officers the ability to present an affidavit to a magistrate in every DWI case, just like every other criminal offense." *See Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).

In this case, the State relies upon these implied-consent statutes to establish that Ruiz effectively consented to the warrantless blood draw, which is a recognized exception to the warrant requirement. We disagree with the State's position. The record is undisputed that Ruiz was unconscious and hospitalized during the course of Sergeant McBride's investigation on September 9, 2012. Regardless of this fact, the State appears to rely upon section 724.014(a) as a key to unlock the recognized consent exception to the warrant requirement. We do not read the implied consent statutes as expansively as the State advances on appeal.

When the State seeks to rely upon consent to justify the lawfulness of a search, it must prove that the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 546 (1968). Additionally, a person who consents to a search may also specifically limit or revoke such consent. *See Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 450 (Tex. Crim. App. 2010). The question of whether a consent was valid is a question of fact that the State must prove by clear and convincing evidence. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). The fact finder must consider the totality of the circumstances in determining whether consent was given voluntarily. *Id.* Thus, the State cannot meet

7

its burden to establish that one consented if such consent was not given freely and voluntarily. *See Bumper*, 391 U.S. at 546. Here, the trial court found that Ruiz was unconscious and did not respond to Sergeant McBride. It is clear that based upon these facts, Ruiz was unable to give his consent freely and voluntarily, or have the opportunity to revoke such consent. *See id.*; *see also Florida v. Jimeno*, 500 U.S. 248, 252 (1991) (holding that a suspect may delimit the scope of a search for which he has consented); *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) ("[I]t is undisputed that . . . consent may be limited or revoked."). Therefore, we decline to hold that sections 724.011(a) and 724.014(a) of the transportation code is the equivalent to voluntary consent as a recognized exception to the warrant requirement. *See Forsyth v. State*, 438 S.W.3d 216, 222 (Tex. App.—Eastland 2014, pet. ref'd) (holding that implied consent under the Transportation Code is not the equivalent to voluntary consent as a recognized exception to the warrant requirement).

Additionally, the implied consent statutes at issue in this case do not address or purport to dispense with the Fourth Amendment's warrant requirements for blood draws. *See Villarreal*, 2014 WL 1257150 at *11 (holding the same as it relates to section 724.012(b)(3)(B)). These statutes do not take into account the totality of the circumstances present in each case, as mandated by *McNeely*, and only consider certain facts—that is: (1) was the person arrested for driving while intoxicated; and (2) was implied consent revoked? As a result, we hold that the implied consent statutes involved in this case are not recognized exceptions to the warrant requirement under the Fourth Amendment, and the State's reliance on these statutes in this case to establish that the warrantless search was reasonable is constitutionally infirm. *See id.*; *see also Perez v.*

8

*State*, No. 01-12-01001-CR, 2015 WL 1245469, at *9 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, pet. filed) ("the warrantless taking of appellant's blood sample pursuant to the implied consent/mandatory blood draw statutory scheme did not satisfy the requirements of the Fourth Amendment without a showing that some established exception to the warrant requirement applied"); *State v. Anderson*, 445 S.W.3d 895, 912 (Tex. App.—Beaumont 2014, no pet.) (holding that nothing in section 724.011 nor section 724.012 require police to take blood without a warrant); *Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544, at *4 (Tex. App.—Tyler Aug. 27, 2014, pet. filed) (mem. op., not designated for publication) ("the implied consent and mandatory blood draw statutory schemes found in the transportation code are not exceptions to the warrant requirement under the Fourth Amendment"); *Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App.—San Antonio 2014, pet. filed) (holding that the transportation code's implied consent statutes were not permissible exceptions to the Fourth Amendment's warrant requirement); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex. App.—Texarkana 2014, pet. granted) (holding that in the absence of a warrant or exigent circumstances, taking defendant's blood pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code violated his Fourth Amendment rights); *Sutherland v. State*, 436 S.W.3d 28, 41 (Tex. App.—Amarillo 2014, pet. filed) ("To the extent that Section 724.012(b)(3)(B) can be read to permit, nonetheless, a warrantless seizure of a suspect's blood in the absence of such exigent circumstances or the suspect's consent, it runs afoul of the Fourth Amendment's warrant requirement.").

Furthermore, we respectfully disagree with the dissent's implied consent analysis in two respects. First, the dissent asserts that we are requiring the State "contrary to the

9

plain language of the statute, to prove that the consent was freely and voluntarily given." However, this requirement is not a novel imposition by the majority, but rather one required by the Fourth Amendment. *See Bumper*, 391 U.S. at 548 (holding that to rely on consent to justify the lawfulness of a search, the State must show that consent was "freely and voluntarily given."); *see also Beeman*, 86 S.W.3d at 616 (implied consent law gives "police officers nothing more than the Constitution already gives them—the ability to apply for a search warrant, and if the magistrate finds probable cause to issue that warrant, the ability to effectuate it. This does not give officers the ability to forcibly obtain blood samples from anyone arrested for DWI). To give the State *carte blanche* authority, as advanced by the State and adopted by the dissent, to draw a suspected unconscious drunk driver's blood without a warrant evokes more questions than it does answers. For example, under what authority may the State supply consent for individuals, who have not yet freely and voluntarily consented? In what other respects and situations, other than drunk driving investigations, may the State statutorily imply consent to search persons, houses, papers, and effects without a warrant? Such a position by the State is untenable and flies in the face of common sense and into the abyss of absurdity. *See Griffith v. State*, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003) ("If one reasonable interpretation yields absurd results while the other interpretation yields no such absurdities, the latter interpretation is preferred.").

Second, we do not believe that our holding today renders the entire implied consent statutory scheme ineffective as the dissent states. The implied consent statutory scheme is premised on consent. *See Villarreal*, 2014 WL 1257150 at *9 (citing TEX. TRANSP. CODE ANN. § 724.011(a); *Beeman*, 86 S.W.3d at 615)). Further, section

10

724.014 is likewise premised on consent. *See* TEX. TRANSP. CODE ANN. § 724.014(a) ("A person who is dead, unconscious, or otherwise incapable of refusal is considered not *to have withdrawn the consent* provided by Section 724.011.") (emphasis added). Based on the facts of this case and the totality of the circumstances, Ruiz never consented to trigger the applicable provisions of Chapter 724 of the transportation code.

In summary, we conclude that the State did not meet its burden to establish the reasonableness of drawing Ruiz's blood without a warrant pursuant to sections 724.011(a) and 724.014(a) of the transportation code.[1]  *See Ford*, 158 S.W.3d at 492.

## 2. Exigency

In the alternative, the State asserts that exigent circumstances justified the taking Ruiz's blood without a warrant.

Exigency is a "well-recognized exception" to the warrant requirement, when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011) (internal quotation marks and brackets omitted). Exigent circumstances that have been recognized by the United States Supreme Court include:   entering a home to provide emergency assistance to an occupant; engaging in a hot pursuit of a fleeing suspect, entering a burning building to put out a fire and investigate its cause, and preventing the imminent destruction of evidence.  *See McNeely,* 133 S.Ct. at 1558–559 (internal citations omitted).

---

[1] We do not hold that sections 724.011(a) and 724.014(a) of the transportation code are unconstitutional.  Instead, we hold that these provisions do not create per se exceptions to the Fourth Amendment's warrant requirement.

To validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). First, probable cause must exist to search—that is, reasonable, trustworthy facts and circumstances within the knowledge of the officer on the scene would lead an officer of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found." *See id.* at 685. Second, an exigent circumstance exists to justify a warrantless search. *See id.* To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, we look to the totality of circumstances. *McNeely*, 133 S.Ct. at 1559. Without establishing probable cause and exigent circumstances, a warrantless search will not stand. *Gutierrez*, 221 S.W.3d at 685–86.

In this case, we agree with the State that it had probable cause to arrest Ruiz for driving while intoxicated. The record shows that Ruiz was involved in an accident, in which he fled the scene. Upon arrival, Sergeant McBride discovered several beer cans thrown about Ruiz's vehicle. Furthermore, Ruiz's unconscious body was found in a field behind a car wash, and according to Sergeant McBride, Ruiz "couldn't open his eyes" and his body emitted a "strong odor of [alcohol]." We conclude that sufficient probable cause existed to arrest Ruiz for driving while intoxicated. *See id.* at 685.

Next, the State asserts that several issues prevented Sergeant McBride from obtaining a search warrant to draw Ruiz's blood thereby creating exigency. Specifically, the State argues that Sergeant McBride "was required to not only investigate the scene of the accident," but also was required to identify and locate Ruiz, who had fled the scene of the collision. Sergeant McBride also testified that it would have taken her "three hours" to obtain a warrant to draw Ruiz's blood. However, Sergeant McBride opted not

12

to obtain a warrant because only two officers were on duty that night and to take one off duty to apply for a warrant was not feasible. Furthermore, although Sergeant McBride's testified that no procedures were in place by the Gonzales Police Department to obtain search warrants for blood in driving while intoxicated cases, the crux of her argument for not obtaining a warrant related more to the amount of time that it would take to obtain the warrant rather than an inability to apply for a warrant. Additionally, Sergeant McBride agreed with the State's prosecutor that it would have been "difficult to find a judge" at midnight on a Saturday night and that she would have had to drive to the magistrate's house to obtain the warrant, while the alcohol in Ruiz's blood stream dissipated. Finally, the trial court found that: (1) Ruiz was unconscious throughout Sergeant McBride's investigation, (2) physicians admitted Ruiz into the hospital overnight, and (3) Ruiz presented no risk of flight.

The context of blood testing is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a "now or never" situation. *McNeely*, 133 S.Ct. at 1561. The *McNeely* court noted that blood alcohol evidence from a drunk-driving suspect "naturally dissipates over time in a gradual and relatively predictable manner, rather than in circumstances in which the suspect has control over easily disposable evidence." *Id.* Additionally, the time expended by a police officer to transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test creates an inevitable delay between the time of the arrest or accident and the time of the test, regardless of whether the police officers are required to obtain a warrant. *Id.* Additionally, the *McNeely* court noted that technological developments enable police

13

officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion. *Id.* at 1562–563 (citing various state statutes that allow police to use technology-based developments to "streamline the warrant process"); *see also Clay v. State*, 391 S.W.3d 94, 103–04 (Tex. Crim. App. 2013) (holding that "no compelling reasoning" contemplated in the search warrant statute requires that the oath always be administered in the corporal presence of the magistrate, so long as sufficient care is taken in the individual case to preserve the same or equivalent solemnizing function to that which corporal presence accomplishes).[2]

In this case, the State's exigency argument relates to Sergeant McBride's timing concerns of obtaining the warrant. While we recognize that factors such as procedures in place for obtaining a warrant, or the availability of a magistrate judge, as well as practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence may establish exigency to permit a warrantless search, we must still look to the particular facts and circumstances of each case. *See McNeely*, 133 S.Ct. at 1568. Here, the State produced no evidence to show that destruction of Ruiz's blood alcohol was imminent, how it was deprived of an opportunity to obtain reliable evidence within a timeframe, or how a more expeditious process was not available to locate a magistrate and obtain a warrant from the magistrate through alternative means such as via telephone rather than physically driving to the magistrate's

---

[2] The dissent's reliance on *Schmerber* to support the conclusion that Sergeant McBride believed that she was facing the imminent destruction of evidence was sufficient to support an exigent circumstance to conduct a warrantless blood draw is misplaced because it does not take into account the factors discussed in *McNeely* regarding technological developments in the law to obtain a search warrant without having to physically visit a magistrate. *See McNeely v. Missouri*, 133 S.Ct. 1552, 1562–563 (2013); *see also Clay v. State*, 391 S.W.3d 94, 103–04 (Tex. Crim. App. 2013).

14

home.    Therefore, under the totality of the circumstances of this case, we agree with the trial court and hold that the State did not meet its burden to show that Ruiz's warrantless blood draw was justified by exigent circumstances.    The State's sole issue on appeal is overruled.

### III.    CONCLUSION

We affirm the trial court's granting of Ruiz's motion to suppress.


GINA M. BENAVIDES,
Justice

Dissenting Opinion by
Justice Gregory T. Perkes.

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
27th day of August, 2015.

15

APPENDIX B


Dissenting Opinion of Justice Perkes,
August 27, 2015



**NUMBER 13-13-00507-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

THE STATE OF TEXAS,                                                                                    Appellant,

v.

JOSE RUIZ,                                                                                                        Appellee.

---

**On appeal from the 25th District Court
of Gonzales County, Texas.**

---

## DISSENTING OPINION

**Before Chief Justice Valdez and Justices Benavides, and Perkes
Dissenting Opinion by Justice Perkes**

I dissent from the majority's opinion for two reasons. First, I believe Sergeant McBride obtained the blood sample with appellee Jose Ruiz's implied consent. Second, I believe the totality of the circumstances in this case permit the taking of a blood sample without the necessity of a warrant.

## I.   BACKGROUND

Sergeant Bethany McBride, with the Gonzales Police Department, was dispatched to a two vehicle accident around midnight on September 9, 2012.   When Sergeant McBride arrived at the scene, she observed a tan Lincoln Navigator that had collided with a tan Pontiac.   The driver of the tan Pontiac remained at the scene but the driver of the Lincoln Navigator had fled.   As Sergeant McBride investigated the scene, two witnesses approached and gave her a description of the Lincoln's driver and stated that the driver had run behind a nearby car wash.   Sergeant McBride looked in the Lincoln Navigator to determine the identity of the driver, and located insurance paperwork that belonged to Ruiz.   While inside the vehicle, Sergeant McBride observed several Bud Light cans in the front seat area.   While searching the area where the witnesses said Ruiz had fled, the police officers located Ruiz in a field behind the car wash.   Ruiz was unresponsive and it took several officers to carry him to the patrol unit.   Sergeant McBride noticed a very strong odor of alcoholic beverages coming from Ruiz and determined that he was unresponsive due to the amount of alcohol in his system.

Sergeant McBride drove Ruiz to the hospital, where she placed him under arrest for driving while intoxicated.   When Sergeant McBride ran Ruiz's criminal history, she learned that Ruiz had four prior convictions for driving while intoxicated.   Sergeant McBride prepared the necessary hospital paperwork to obtain a blood sample, and a qualified hospital lab technician drew Ruiz's blood.   Ruiz remained unresponsive the entire time.   Ruiz was indicted for DWI—third or more offense, a third-degree felony enhanced to a habitual felony offender.   *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2)

2

(West, Westlaw through Ch. 46 2015 R.S.).   Following his indictment, Ruiz filed a motion to suppress the blood evidence.

During the hearing on Ruiz's motion to suppress, Sergeant McBride explained that she was one of only two officers on duty for the Gonzales Police Department at the time, and that it would have been impracticable to remove one officer from duty to secure the warrant.   Sergeant McBride testified that there were no procedures in place to obtain a search warrant for blood draws and that it would have been difficult to locate a judge at midnight on a Saturday night.   Sergeant McBride further testified that if she were able to get a warrant, it would have taken two or three hours.   Sergeant McBride stated that the circumstances of the investigation—the accident, driver identification, Ruiz's fleeing and unresponsiveness—prolonged the case beyond a normal DWI investigation.

The State's argument at the hearing was twofold.   First, it argued that because Ruiz was incapable of refusing the blood test, he was deemed to have consented under implied consent.   Second, it argued that the circumstances of the investigation and arrest demonstrated exigency sufficient to dispense of the warrant requirement.

The trial court granted Ruiz's motion to suppress the blood evidence.   In its comprehensive findings of fact and conclusions of law, the trial court concluded that Ruiz did not revoke his consent to the blood draw under section 724.011 of the Texas Transportation Code.   The trial court further concluded that it was bound by *Missouri v. McNeely,* 133 S.Ct. 1552 (2013) and that no exigent circumstances existed.

## II.   BLOOD EVIDENCE

By its sole issue, the State asserts that the trial court erred when it granted Ruiz's

motion to suppress. Specifically, the State argues Ruiz was unconscious at the time of the blood draw and thus incapable of withdrawing his consent to the blood draw under the Texas Transportation Code. Alternatively, the State argues there were sufficient exigent circumstances present which justified the warrantless taking of Ruiz's blood sample. I agree with both of the State's arguments.

## A.      Implied Consent

Warrantless searches may be premised on consent. *See* TEX. TRANSP. CODE ANN. §§ 724.011, 724.012(b) (West, Westlaw through Ch. 46 2015 R.S.); *Schneckloth v. Bustamante*, 412 U.S. 218, 219 (1973).

The Texas Transportation Code provides that:

(a) If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

*See* TEX. TRANSP. CODE ANN. § 724.011(a).[1]

Additionally, section 724.014 states that:

(a) A person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn the consent provided by Section 724.011.

. . . .

(c) If the person is alive but is incapable of refusal, a specimen may be taken by a person authorized under Section 724.016 or 724.017.[2]

---

[1] The trial court specifically found that Ruiz was under arrest prior to the taking of the blood sample.

[2] These sections involve the procedures for taking a sample and qualifications of the person taking

4

*See* TEX. TRANSP. CODE ANN. §§ 724.014(a), (c) (West, Westlaw through Ch. 46 2015 R.S.). The presumption of consent is so strong that a person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn the consent provided by Section 724.011. *State v. Amaya*, 221 S.W.3d 797, 800 (Tex. App.—Fort Worth 2007, pet. ref'd).

The uncontroverted evidence shows that Ruiz was unconscious throughout the entire encounter with law enforcement, including the blood draw at the hospital. The testimony supports the trial court's finding that Ruiz never affirmatively revoked his consent under section 724.011. Ruiz was precisely the type of person—a person incapable of refusal—contemplated by section 724.014. *See Miller v. State*, 387 S.W.3d 873, 880–81 (Tex. App.—Amarillo 2012, no pet.) (holding that because defendant was incapacitated, he was considered not to have withdrawn consent provided by section 724.011); *Amaya*, 221 S.W.3d at 802. This factual scenario is the type of situation where implied consent makes perfect sense. To hold otherwise would render ineffective the entire implied consent statutory scheme.

The majority states that it refuses to read the implied consent statute "expansively", but then requires the State, contrary to the plain language of the statute, to prove that the consent was freely and voluntarily given. Such a reading encumbers the State with the impossible task of obtaining consent freely and voluntarily from an unconscious person. While the majority correctly states that consent must be freely and voluntarily given, the cases it relies on are factually distinguishable. *See Bumper v. North Carolina*, 391 U.S.

---

the sample. *See* TEX. TRANSP. CODE ANN. §§ 724.016, 017 (West, Westlaw through Ch. 45 2015 R.S.)

543, 546 (1968) (examining consent in the context of police coercion); *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (explaining defendant revoked consent for officers to enter apartment after domestic violence investigation was complete); *Valtierra v. State*, 310 S.W.3d 442, 452 (Tex. Crim. App. 2010) (holding that in context of drug possession case, "[o]nce permitted into a residence, a police officer may take action only in accordance with the purpose for which he was invited or allowed into the residence."); *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012) (holding that trial court did not abuse its discretion in finding that defendant gave consent for breath sample when defendant vacillated between granting and withdrawing consent in conversation with officer); *Forsyth v. State*, 438 S.W.3d 216, 222 (Tex. App.—Eastland 2014, pet. ref'd) (holding that circumstances required search warrant to collect blood evidence where defendant explicitly refused to provide blood sample during DWI investigation).

Ruiz's blood sample was taken pursuant to implied consent as provided by the transportation code. *See* TEX. TRANS. CODE ANN. §§ 724.011, 724.014. Because the implied consent laws in this instance do not offend the Fourth Amendment, I would conclude that the blood sample was obtained legally. *See Miller*, 387 S.W.3d at 880–81; *see also Anderson v. State*, No. 03–09–00041–CR, 2010 WL 3370054, at *3 (Tex. App.—Austin Aug. 26, 2010, pet. ref'd) (mem. op.) (not designated for publication).

## B. Exigency

*Missouri v. McNeely*, relied on by the trial court, answered the narrow question regarding whether the natural metabolization of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment's search warrant

6

requirement for nonconsensual blood testing in drunk-driving cases. *See* 133 S.Ct. 1552, 1568 (2013). *McNeely*, however, further recognizes and affirms the totality of circumstances approach in deciding whether a warrant is required. *See id.* at 1559 (citing *Schmerber v. California*, 384 U.S. 757 (1966)). *McNeely* contemplates situations where "circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* at 1561.

*McNeely* supports a finding of exigency sufficient to justify the warrantless blood test in this case. After arriving at the scene of an accident in the middle of the night, Sergeant McBride was required to not only investigate the scene of the accident but also required to find Ruiz and identify him as a driver involved in the accident. Additionally, when Sergeant McBride was finally able to locate Ruiz, he was unconscious and in need of medical attention. Sergeant McBride testified that no magistrate was on duty, and that it would have taken time to find one, drive the warrant to their residence to have it signed, and then return to the hospital to serve the warrant. She estimated that obtaining a warrant would have taken two or three hours and that it was impractical to remove one of the only two officers on duty that night in order to prepare a search warrant affidavit. Under these circumstances, it was reasonable for Sergeant McBride to believe that she was facing the imminent destruction of evidence. *See Schmerber*, 384 U.S., at 771 (holding that warrantless search was legal when "there was no time to seek out a magistrate and secure a warrant").

Because the blood evidence was taken with implied consent, and, alternatively,

7

under exigent circumstances, I would sustain the State's issue.

### III.   CONCLUSION

I would reverse the order of the trial court and remand for further proceedings.


                                         GREGORY T. PERKES
                                         Justice

Publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
27th day of August, 2015.

8