

NUMBER 13-13-00507-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                        Appellant,

v.

JOSE RUIZ,                                                Appellee.

On appeal from the 25th District Court
of Gonzales County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Benavides and Perkes
Opinion by Justice Benavides**

In this appeal, the State challenges the trial court's granting of appellee, Jose

Ruiz's, motion to suppress blood alcohol test results that police seized following his arrest

for driving while intoxicated.    We affirm.

## I.  BACKGROUND

On September 9, 2012, Gonzales Police Sergeant Bethany McBride arrived on the scene of an accident shortly after midnight in Gonzales County to discover a collision between a Lincoln Navigator and a Pontiac.  Witnesses at the scene told Sergeant McBride that the driver of the Navigator, later identified as Ruiz, had fled the scene and had run behind a car wash.

Sergeant McBride looked into the Navigator and found insurance paperwork in Ruiz's name, as well as "several Bud Light . . . cans, that [had] exploded in the [front] seat."  Other officers later located Ruiz in a field behind the car wash that witnesses had described earlier.  Sergeant McBride described Ruiz as "unresponsive" that night and further observed that he "couldn't open his eyes."  Additionally, his body emitted a "strong odor of [alcohol]."  According to Sergeant McBride, Ruiz did not appear to be injured, but was "just unresponsive due to the amount of alcohol in his system."

Emergency medical personnel eventually arrived, and also attempted to elicit responses from Ruiz by performing several sternum rubs, but such tests were unsuccessful.  As a result, Ruiz was taken by ambulance to Gonzales Memorial Hospital.  At the hospital, Ruiz remained unresponsive.  Sergeant McBride testified that she had enough probable cause to place Ruiz under arrest for driving while intoxicated and completed paperwork at the hospital for lab technicians to administer a blood draw. Sergeant McBride also discovered that Ruiz had four prior convictions for driving while intoxicated.  Once Ruiz's blood was drawn, Sergeant McBride took custody of Ruiz's blood evidence and returned to the Gonzales Police Station.

On cross examination, Sergeant McBride testified that it would have been unreasonable to obtain a search warrant of Ruiz's blood for a number of reasons, namely: (1) it was difficult to find a magistrate or judge to sign a search warrant that late at night, and she was required to drive to the judge's house to retrieve the warrant; and (2) only two officers were on duty that night, and Sergeant McBride did not want to take one of the officers off duty to work on the warrant. According to Sergeant McBride, she estimated that it would have taken her "about two or three hours" to obtain a search warrant that night. Sergeant McBride also admitted that at the time, no procedures were in place to obtain search warrants for blood draws. The record also shows that Ruiz was admitted to the hospital overnight due to his sustained unconsciousness and did not appear to be a flight risk.

At the suppression hearing, the State stipulated that it had conducted a warrantless blood draw, but argued that the blood draw was nevertheless valid because: (1) section 724.014 of the transportation code provides implied consent of an accused who is unconscious, and (2) exigent circumstances existed. The trial court granted Ruiz's motion to suppress, and issued the following relevant findings of fact and conclusions of law:

**Findings of Fact**

1.      [Ruiz] was involved in an accident late at night to early morning on September 9, 2013. Gonzales Police Department Sgt. Bethany McBride responded.

. . . .

4.      Following [Ruiz's] arrest by McBride the attending physicians indicated they wanted to keep [Ruiz] overnight.

3

5.   There was no concern that [Ruiz] would flee from the hospital.

6.   A warrant could have been obtained within 2 to 3 hours.

. . . .

8.   McBride performed a criminal history check on [Ruiz] and found four previous convictions for DWI.  Relying on Texas Penal Code 724.012 and 724.014 McBride ordered the blood draw from [Ruiz].

9.   [Ruiz] remained in custodial arrest during the time the blood was drawn.

10.  The court finds Officer McBride's testimony to be credible in all respects.

## Conclusions of Law

1.   The court takes judicial notice of all statutes promulgated under [the] Texas Transportation Code and in effect during all times relevant to this case.

2.   The court finds that it is bound by *Missouri v. McNeely*, 133 S.Ct. 1552, 1558, 185 L. Ed. 2d 696 (2013).

3.   [Ruiz] did not revoke his consent to a blood draw under section 724.011 of the Texas Transportation Code.

4.   No exigent circumstances existed in this case.

5.   Believing itself to be bound by *McNeely*, the court granted the motion to suppress.

6.   If exigent circumstances existed the court believes *McNeely* would not apply and the motion to suppress would be denied.

This appeal followed.

## II.   MOTION TO SUPPRESS

By its sole issue, the State contends that the trial court erred by granting Ruiz's motion to suppress because he impliedly consented to the blood draw, and even if he did not consent, there were sufficient exigent circumstances to justify the warrantless blood

4

draw.

## A.     Applicable Law and Standard of Review

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  This initial burden is satisfied by establishing that a search occurred without a warrant.  *Id.*  Once a defendant makes this showing, the burden of proof shifts to the State where it is required to establish that the search was conducted pursuant to a warrant or under a reasonable exception.  *Id.* (citing *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)).

In reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013); *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).  When the trial court does not make explicit findings of fact, we infer the necessary factual findings that support the trial court's ruling if the record evidence (viewed in light most favorable to the ruling) supports these implied facts. *Johnson*, 414 S.W.3d at 192.

Motions to suppress are reviewed pursuant to a bifurcated standard under which the trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record.   But when mixed questions of law and fact do not depend on the evaluation of credibility and demeanor, we review the trial judge's ruling de novo.  *Id.* (citing *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. 2013); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

5

**B.    Discussion**

In this case, the State stipulated that Ruiz's blood was drawn without a warrant. Therefore, the burden shifted to the State to establish that the search was reasonable. Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances. *Missouri v. McNeely*, 133 S.Ct. 1552, 1563 (2013).

To meet its burden that the warrantless search in this case was reasonable, the State asserts that Texas's implied consent law, *see* TEX. TRANSP. CODE ANN. §§ 724.011; 724.014 (West, Westlaw through Ch. 46 2015 R.S.), established Ruiz's consent to the blood draw; and in the alternative, exigent circumstances existed to justify the taking of Ruiz's blood.   We will analyze each argument below.

**1.  Implied Consent**

Section 724.011(a) of the transportation code implies consent for an individual who has been arrested for driving while intoxicated.   *See id.* § 724.011(a); *see State v. Villarreal*, No. 13–13–00253–CR, __ S.W.3d __, __, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014) *aff'd*, No. PD–0306–14, 2014 WL 6734178 at *21 (Tex. Crim. App. Nov. 26, 2014) *reh'g granted*, (Feb. 25, 2015).   This implied consent, however, may be revoked, absent certain exceptions. *See id.* § 724.013 ("Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.").   Thus, if a drunk-driving suspect refuses to submit to the taking of a specimen, police are prohibited from doing so without a warrant.   *Id.*   However, if a drunk-driving suspect is "dead, unconscious, or otherwise incapable of refusal," implied consent is considered "not to

6

have [been withdrawn] as provided by section 724.011." *See id.* § 724.014(a). This implied-consent law framework, however "does not give officers the ability to forcibly obtain blood samples from anyone arrested for [driving while intoxicated]," but instead "gives officers the ability to present an affidavit to a magistrate in every DWI case, just like every other criminal offense." *See Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002).

In this case, the State relies upon these implied-consent statutes to establish that Ruiz effectively consented to the warrantless blood draw, which is a recognized exception to the warrant requirement. We disagree with the State's position. The record is undisputed that Ruiz was unconscious and hospitalized during the course of Sergeant McBride's investigation on September 9, 2012. Regardless of this fact, the State appears to rely upon section 724.014(a) as a key to unlock the recognized consent exception to the warrant requirement. We do not read the implied consent statutes as expansively as the State advances on appeal.

When the State seeks to rely upon consent to justify the lawfulness of a search, it must prove that the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 546 (1968). Additionally, a person who consents to a search may also specifically limit or revoke such consent. *See Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 450 (Tex. Crim. App. 2010). The question of whether a consent was valid is a question of fact that the State must prove by clear and convincing evidence. *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). The fact finder must consider the totality of the circumstances in determining whether consent was given voluntarily. *Id.* Thus, the State cannot meet

7

its burden to establish that one consented if such consent was not given freely and voluntarily. *See Bumper*, 391 U.S. at 546. Here, the trial court found that Ruiz was unconscious and did not respond to Sergeant McBride. It is clear that based upon these facts, Ruiz was unable to give his consent freely and voluntarily, or have the opportunity to revoke such consent. *See id.*; *see also Florida v. Jimeno*, 500 U.S. 248, 252 (1991) (holding that a suspect may delimit the scope of a search for which he has consented); *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) ("[I]t is undisputed that . . . consent may be limited or revoked."). Therefore, we decline to hold that sections 724.011(a) and 724.014(a) of the transportation code is the equivalent to voluntary consent as a recognized exception to the warrant requirement. *See Forsyth v. State*, 438 S.W.3d 216, 222 (Tex. App.—Eastland 2014, pet. ref'd) (holding that implied consent under the Transportation Code is not the equivalent to voluntary consent as a recognized exception to the warrant requirement).

Additionally, the implied consent statutes at issue in this case do not address or purport to dispense with the Fourth Amendment's warrant requirements for blood draws. *See Villarreal*, 2014 WL 1257150 at *11 (holding the same as it relates to section 724.012(b)(3)(B)). These statutes do not take into account the totality of the circumstances present in each case, as mandated by *McNeely*, and only consider certain facts—that is: (1) was the person arrested for driving while intoxicated; and (2) was implied consent revoked? As a result, we hold that the implied consent statutes involved in this case are not recognized exceptions to the warrant requirement under the Fourth Amendment, and the State's reliance on these statutes in this case to establish that the warrantless search was reasonable is constitutionally infirm. *See id.*; *see also Perez v.*

8

*State*, No. 01-12-01001-CR, 2015 WL 1245469, at *9 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, pet. filed) ("the warrantless taking of appellant's blood sample pursuant to the implied consent/mandatory blood draw statutory scheme did not satisfy the requirements of the Fourth Amendment without a showing that some established exception to the warrant requirement applied"); *State v. Anderson*, 445 S.W.3d 895, 912 (Tex. App.—Beaumont 2014, no pet.) (holding that nothing in section 724.011 nor section 724.012 require police to take blood without a warrant); *Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544, at *4 (Tex. App.—Tyler Aug. 27, 2014, pet. filed) (mem. op., not designated for publication) ("the implied consent and mandatory blood draw statutory schemes found in the transportation code are not exceptions to the warrant requirement under the Fourth Amendment"); *Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App.—San Antonio 2014, pet. filed) (holding that the transportation code's implied consent statutes were not permissible exceptions to the Fourth Amendment's warrant requirement); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex. App.—Texarkana 2014, pet. granted) (holding that in the absence of a warrant or exigent circumstances, taking defendant's blood pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code violated his Fourth Amendment rights); *Sutherland v. State*, 436 S.W.3d 28, 41 (Tex. App.—Amarillo 2014, pet. filed) ("To the extent that Section 724.012(b)(3)(B) can be read to permit, nonetheless, a warrantless seizure of a suspect's blood in the absence of such exigent circumstances or the suspect's consent, it runs afoul of the Fourth Amendment's warrant requirement.").

Furthermore, we respectfully disagree with the dissent's implied consent analysis in two respects. First, the dissent asserts that we are requiring the State "contrary to the

9

plain language of the statute, to prove that the consent was freely and voluntarily given." However, this requirement is not a novel imposition by the majority, but rather one required by the Fourth Amendment. *See Bumper*, 391 U.S. at 548 (holding that to rely on consent to justify the lawfulness of a search, the State must show that consent was "freely and voluntarily given."); *see also Beeman*, 86 S.W.3d at 616 (implied consent law gives "police officers nothing more than the Constitution already gives them—the ability to apply for a search warrant, and if the magistrate finds probable cause to issue that warrant, the ability to effectuate it. This does not give officers the ability to forcibly obtain blood samples from anyone arrested for DWI). To give the State *carte blanche* authority, as advanced by the State and adopted by the dissent, to draw a suspected unconscious drunk driver's blood without a warrant evokes more questions than it does answers. For example, under what authority may the State supply consent for individuals, who have not yet freely and voluntarily consented? In what other respects and situations, other than drunk driving investigations, may the State statutorily imply consent to search persons, houses, papers, and effects without a warrant? Such a position by the State is untenable and flies in the face of common sense and into the abyss of absurdity. *See Griffith v. State*, 116 S.W.3d 782, 785 (Tex. Crim. App. 2003) ("If one reasonable interpretation yields absurd results while the other interpretation yields no such absurdities, the latter interpretation is preferred.").

Second, we do not believe that our holding today renders the entire implied consent statutory scheme ineffective as the dissent states. The implied consent statutory scheme is premised on consent. *See Villarreal*, 2014 WL 1257150 at *9 (citing TEX. TRANSP. CODE ANN. § 724.011(a); *Beeman*, 86 S.W.3d at 615)). Further, section

10

724.014 is likewise premised on consent. *See* TEX. TRANSP. CODE ANN. § 724.014(a) ("A person who is dead, unconscious, or otherwise incapable of refusal is considered not *to have withdrawn the consent* provided by Section 724.011.") (emphasis added). Based on the facts of this case and the totality of the circumstances, Ruiz never consented to trigger the applicable provisions of Chapter 724 of the transportation code.

In summary, we conclude that the State did not meet its burden to establish the reasonableness of drawing Ruiz's blood without a warrant pursuant to sections 724.011(a) and 724.014(a) of the transportation code.[1] *See Ford*, 158 S.W.3d at 492.

### 2. Exigency

In the alternative, the State asserts that exigent circumstances justified the taking Ruiz's blood without a warrant.

Exigency is a "well-recognized exception" to the warrant requirement, when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011) (internal quotation marks and brackets omitted). Exigent circumstances that have been recognized by the United States Supreme Court include: entering a home to provide emergency assistance to an occupant; engaging in a hot pursuit of a fleeing suspect, entering a burning building to put out a fire and investigate its cause, and preventing the imminent destruction of evidence. *See McNeely*, 133 S.Ct. at 1558–559 (internal citations omitted).

---

[1] We do not hold that sections 724.011(a) and 724.014(a) of the transportation code are unconstitutional. Instead, we hold that these provisions do not create per se exceptions to the Fourth Amendment's warrant requirement.

To validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). First, probable cause must exist to search—that is, reasonable, trustworthy facts and circumstances within the knowledge of the officer on the scene would lead an officer of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found." *See id.* at 685. Second, an exigent circumstance exists to justify a warrantless search. *See id.* To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, we look to the totality of circumstances. *McNeely,* 133 S.Ct. at 1559. Without establishing probable cause and exigent circumstances, a warrantless search will not stand. *Gutierrez*, 221 S.W.3d at 685–86.

In this case, we agree with the State that it had probable cause to arrest Ruiz for driving while intoxicated. The record shows that Ruiz was involved in an accident, in which he fled the scene. Upon arrival, Sergeant McBride discovered several beer cans thrown about Ruiz's vehicle. Furthermore, Ruiz's unconscious body was found in a field behind a car wash, and according to Sergeant McBride, Ruiz "couldn't open his eyes" and his body emitted a "strong odor of [alcohol]." We conclude that sufficient probable cause existed to arrest Ruiz for driving while intoxicated. *See id.* at 685.

Next, the State asserts that several issues prevented Sergeant McBride from obtaining a search warrant to draw Ruiz's blood thereby creating exigency. Specifically, the State argues that Sergeant McBride "was required to not only investigate the scene of the accident," but also was required to identify and locate Ruiz, who had fled the scene of the collision. Sergeant McBride also testified that it would have taken her "three hours" to obtain a warrant to draw Ruiz's blood. However, Sergeant McBride opted not

12

to obtain a warrant because only two officers were on duty that night and to take one off duty to apply for a warrant was not feasible. Furthermore, although Sergeant McBride's testified that no procedures were in place by the Gonzales Police Department to obtain search warrants for blood in driving while intoxicated cases, the crux of her argument for not obtaining a warrant related more to the amount of time that it would take to obtain the warrant rather than an inability to apply for a warrant. Additionally, Sergeant McBride agreed with the State's prosecutor that it would have been "difficult to find a judge" at midnight on a Saturday night and that she would have had to drive to the magistrate's house to obtain the warrant, while the alcohol in Ruiz's blood stream dissipated. Finally, the trial court found that: (1) Ruiz was unconscious throughout Sergeant McBride's investigation, (2) physicians admitted Ruiz into the hospital overnight, and (3) Ruiz presented no risk of flight.

The context of blood testing is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a "now or never" situation. *McNeely*, 133 S.Ct. at 1561. The *McNeely* court noted that blood alcohol evidence from a drunk-driving suspect "naturally dissipates over time in a gradual and relatively predictable manner, rather than in circumstances in which the suspect has control over easily disposable evidence." *Id.* Additionally, the time expended by a police officer to transport a drunk-driving suspect to a medical facility and obtain the assistance of someone with appropriate medical training before conducting a blood test creates an inevitable delay between the time of the arrest or accident and the time of the test, regardless of whether the police officers are required to obtain a warrant. *Id.* Additionally, the *McNeely* court noted that technological developments enable police

13

officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion. *Id.* at 1562–563 (citing various state statutes that allow police to use technology-based developments to "streamline the warrant process"); *see also Clay v. State*, 391 S.W.3d 94, 103–04 (Tex. Crim. App. 2013) (holding that "no compelling reasoning" contemplated in the search warrant statute requires that the oath always be administered in the corporal presence of the magistrate, so long as sufficient care is taken in the individual case to preserve the same or equivalent solemnizing function to that which corporal presence accomplishes).[2]

In this case, the State's exigency argument relates to Sergeant McBride's timing concerns of obtaining the warrant. While we recognize that factors such as procedures in place for obtaining a warrant, or the availability of a magistrate judge, as well as practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence may establish exigency to permit a warrantless search, we must still look to the particular facts and circumstances of each case. *See McNeely*, 133 S.Ct. at 1568. Here, the State produced no evidence to show that destruction of Ruiz's blood alcohol was imminent, how it was deprived of an opportunity to obtain reliable evidence within a timeframe, or how a more expeditious process was not available to locate a magistrate and obtain a warrant from the magistrate through alternative means such as via telephone rather than physically driving to the magistrate's

---

[2] The dissent's reliance on *Schmerber* to support the conclusion that Sergeant McBride believed that she was facing the imminent destruction of evidence was sufficient to support an exigent circumstance to conduct a warrantless blood draw is misplaced because it does not take into account the factors discussed in *McNeely* regarding technological developments in the law to obtain a search warrant without having to physically visit a magistrate. *See McNeely v. Missouri*, 133 S.Ct. 1552, 1562–563 (2013); *see also Clay v. State*, 391 S.W.3d 94, 103–04 (Tex. Crim. App. 2013).

home.   Therefore, under the totality of the circumstances of this case, we agree with the trial court and hold that the State did not meet its burden to show that Ruiz's warrantless blood draw was justified by exigent circumstances.   The State's sole issue on appeal is overruled.

### III.   CONCLUSION

We affirm the trial court's granting of Ruiz's motion to suppress.


GINA M. BENAVIDES,
Justice

Dissenting Opinion by
Justice Gregory T. Perkes.

Publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
27th day of August, 2015.