ACCEPTED
03-15-00153-CR
7525649
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/23/2015 5:14:02 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00153-CR

_____

IN THE COURT OF APPEALS FOR THE THIRD
DISTRICT OF TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
10/23/2015 5:14:02 PM
JEFFREY D. KYLE
Clerk

_____

THE STATE OF TEXAS, Appellant

v.

FRANCES ANITA ROBINSON, Appellee

_____

On Appeal from the 207th Judicial District Court of Comal County, Texas
Cause No. CR2013-267
Honorable Bruce Boyer, District Judge Presiding

_____

**BRIEF FOR THE STATE**

_____

**Jennifer Tharp**
**Criminal District Attorney**

**By**
**Daniel Palmitier**
**SBN: 24062934**
**Assistant District Attorney**
**150 N. Seguin Avenue, Suite #307**
**(830) 221-1300**
**Fax (830) 608-2008**
**New Braunfels, Texas 78130**
**E-mail: preslj@co.comal.tx.us**
**Attorney for the State**

**Oral Argument Is Requested**

## Identity of Parties and Counsel

### Attorney for the Appellant, The State of Texas

**AT TRIAL & ON APPEAL**
Daniel Palmitier
Assistant District Attorney
COMAL COUNTY CRIMINAL DISTRICT ATTORNEY'S OFFICE
150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
Telephone: (830) 221-1300
Facsimile: (830) 608-2008
Email: palmid@co.comal.tx.us

### Attorney for the Appellee Frances Anita Robinson

**AT TRIAL & ON APPEAL**
Charles Sullivan
csullivan@lawcsullivan.com
8115 FM 2673
Canyon Lake, Texas 78133
Telephone: (830) 899- 3259
Fax: (210) 579-6448

# Table of Contents

Index of Authorities ................................................................................ iv, v, vi

Statement of the Case........................................................................... vii

Statement of the Facts .............................................................................1

Summary of the Argument.......................................................................6

Standard of Review..................................................................................6

    *Villareal* does not lead to the conclusion that exigent circumstances did not exist in the instant case ...................................................................7

    Exigent circumstances are to be reviewed on a case by case basis under the totality of the circumstances analysis .............................................8

    Some appellate courts are failing to apply the totality of the circumstances analysis as required by McNeely..................................................12

    Other Texas cases dealing with exigency are distinguishable from the facts in the instant case....................................................................15

    Trooper Alvarez acted lawfully when he seized a sample of Defendant's blood without a search warrant because exigent circumstances existed given the totality of the circumstances analysis in McNeely ..................................20

Prayer .....................................................................................................23

Certificate of Service ..............................................................................25

Certificate of Compliance.......................................................................25

# Index of Authorities

## Cases

*Bowman v. State*, 05-13-01349-CR, 2015
WL 557205 (Tex. App.—Dallas Feb. 10,
2015, no pet.) (not designated for publication)............................................18, 19, 22

*Burcie v. State,* 08-13-00212-CR, 2015
WL 2342876, (Tex. App.—El Paso May 14,
2015) (not designated for publication)..................................................................7

*Douds v. State*, 434 S.W.3d 842 (Tex. App.
—Houston [14th Dist.] 2014), *petition for
discretionary review granted* (Sept. 17,
2014), *rev'd,* PD-0857-14, 2015 WL
5981121 (Tex. Crim. App. Oct. 14, 2015) ............................................................11

*Etheridge v. State,* 903 S.W.2d 1 (Tex. Crim.
App. 1994), *cert. denied* 516 U.S. 920,
116 S.Ct. 314, 133 L.Ed.2d 217 (1995)…………………………………………7

*Evans v. State*, 14-13-00642-CR, 2015
WL 545702 (Tex. App.—Houston [14th
Dist.] Feb. 10, 2015) (not designated for
publication) ....................................................................................................18, 19, 22

*Garcia v. State*, 14-14-00387-CR, 2015 WL
2250895 (Tex. App.—Houston [14th Dist.]
2015) (not designated for publication).......................................................10, 11, 22

*Garcia v. State*, 04-14-00002-CR, 2015 WL
5042143 (Tex. App.—San Antonio Aug. 26,
2015, no. pet. h.) (not designated for
publication) .......................................................................................................15, 21

*Guzman v. State,* 955 S.W.2d 85 (Tex. Crim. App. 1997) ........................................................................7, 23

*Huff v. State*, 04-13-00891-CR, 2015 WL 1731236 (Tex. App.—San Antonio Apr. 8, 2015, pet. filed) ........................................................17, 18, 21

*Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 960 (Tex. App.—Beaumont 1994), *writ denied* (Jan. 12, 1995) ...............................................23

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013)....................................*passim*

*Nickerson v State*, 645 S.W.2d 888 (Tex. App.—Dallas 1983), *aff'd*, 660 S.W.2d 825 (Tex. Crim. App. 1983)………………………………………….23

*State v. Esher*, 05-14-00694-CR, 2015 WL 4527715 (Tex. App.—Dallas July 27, 2015, no. pet. h.) (not designated for publication)......................................16, 21

*State v. Martinez*, 13-14-00117-CR, 2015 WL 1957087 (Tex. App.—Corpus Christi Apr. 30, 2015, no pet.) (not designated for publication).................................13, 20

*State v. Pimentel*, 08-13-00081-CR, 2015 WL 3878079 (Tex. App.—El Paso June 23, 2015, no pet.) (not designated for publication)......................................17, 21

*State v. Rodriguez*, 13-13-00335-CR, 2015 WL 3799353 (Tex. App.—Corpus Christi June 18, 2015) (not designated for publication), *petition for discretionary review filed* (July 2, 2015) ...........................................19

*State v. Ruiz*, 13-13-00507-CR, 2015 WL 5626252 (Tex. App.—Corpus Christi Aug. 27, 2015, no. pet. h.) (not designated for publication) ..................................................................................12, 13, 20, 22

*State v. Tercero*, 01-14-00120-CR, 2015 WL 1544519 (Tex. App.—Houston [1st Dist.] Apr. 2, 2015), *reh'g overruled* (June 30, 2015), *petition for discretionary review filed* (July 7, 2015)……………………………………………….…………17, 21

*Villarreal v. State,* 935 S.W.2d 134 (Tex. Crim. App. 1996)…………………………………………………….6

*State v. Villarreal*, PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014), *reh'g granted* (Feb. 25, 2015) ....................................................................1, 2, 6, 7

## Statement of the Case

Appellee was indicted by a grand jury on June 5, 2013 for the charge of Intoxication Manslaughter. The trial court granted Appellee's motion to suppress evidence on February 18, 2015, and the State timely appealed pursuant to article 44.01 of the Code of Criminal Procedure. This Court granted a stay on March 20, 2015. After the Court abated and remanded the case for entry of the trial court's findings, the case was reinstated in this Court on July 20, 2015.

## Statement Regarding Oral Argument

Appellant respectfully requests oral argument, which may aid the Court's decisional process in the instant case.

## Issues Presented

Did the opinion of the Court of Criminal Appeals in *State v. Villareal* – which is currently on rehearing – effectively eliminate the exigent circumstances exception to the general requirement to obtain a warrant?

Were the facts believed to be true by Trooper Alvarez – and, in fact, found to be true by the trial court – insufficient to meet the exigent circumstances exception, despite the fact that the totality of the circumstances showed Alvarez could not obtain a warrant without the inevitable and substantial loss of evidence?

**Statement of the Facts**

After a hearing on Defendant's motion to suppress the trial court made the following findings of facts:

1. On March 11, 2012 at 1:04 A.M. Trooper Richard Alvarez was dispatched to a vehicle accident on Charter Oak in the Oaks Subdivison of Canyon Lake, Texas. He arrived at 1:11 A.M.
2. Trooper Alvarez found an SUV flipped over on its top. Defendant was being extracted by fire and paramedic personnel from the driver's location.
3. There were a minimum of three officers at the scene.
4. Trooper Alvarez made observations at the scene, while interviewing the driver that led him to believe she had been drinking alcohol.
5. Due to suspected injuries, Defendant was transported by EMS to University Hospital in San Antonio.
6. A passenger in the vehicle was ejected from the vehicle and deceased at the scene.
7. Trooper Alvarez was at the scene for 2 ½ to 3 hours.
8. Trooper Rodney Zarate was dispatched to the hospital where he obtained a warrantless, non-consensual blood draw from the defendant.
9. Comal County implemented a "No Refusal Policy" for law enforcement in 2012, where a judge is on call for the purpose of obtaining blood draw warrants.
10. Trooper Alvarez testified that he was the scene investigator, he was the only officer who could have obtained a warrant.
11. Trooper Alvarez testified that he did not believe there were any other troopers available at the time of his investigation.
12. It Generally takes 30-90 minutes to obtain a blood draw warrant by fax process in Comal County.
13. A separate previous blood draw had been performed by hospital personnel for medical purposes prior to the law enforcement draw. (Clerks Supp Record 8-9)

The trial court then made the following conclusion of law: "The Court found that under the criteria of *State of Texas vs. David Villareal*, the State did not

1

demonstrate exigent circumstances upon which to perform a warrantless blood draw (*id.*).

The trial court then made the additional findings of fact:

1. Trooper Alvarez testified at the suppression hearing in the instant case. This Court finds that Trooper Alvarez was credible, and his testimony was likewise credible.
2. Although this court concluded that under the criteria of State of Texas vs. David Villareal, the State did not demonstrate exigent circumstances upon to which to perform a warrantless blood draw, this court finds the facts were as Trooper Alvarez believed them to be on the night of March 11, 2012 (II Supp. C.R. at 16-17).

At the Motion to Suppress hearing, Trooper Rick Alvarez testified that on March 11, 2012 at approximately 1:04 a.m. he was dispatched out to Charter Oak (just off FM 2673 on the south side of Canyon Lake) for an accident with a fatality (I R.R. at 17, 34). He stated there was a heavy fog with light mist that night, and he arrived to find a smaller suv that had flipped on to its roof (I R.R at 18, 21). Defendant was still inside the vehicle – upside down in the driver's seat – and paramedics were attempting to get her out (I R.R. at 19). The deceased, Teddy Copeland, was lying next to the suv (I R.R. at 18). Trooper Alvarez briefly met with Comal County Sherriff's Deputy Dustin Savage and began to work the accident scene (I R.R. at 19). Trooper Alvarez testified that he had over 32 years of law enforcement experience and had investigated over 2000 accidents (I R.R. at 15,16). He began photographing and marking the scene with fluorescent paint before it was effected by weather (I R.R. at 20). As Trooper Alvarez conducted his

2

investigation another Trooper, Trooper Mata, met with witnesses and interviewed them on camera inside his patrol car (I R.R. 19,20).

Trooper Alvarez testified that his department does not have enough manpower to cover the entire county and that he has never seen more than four DPS Troopers on duty at a time (I R.R. at 48). Trooper Alvarez knew that one of the more experienced Troopers was currently at the jail with a suspected DWI defendant (I R.R. at 47). The only other Trooper on duty, Trooper McWhinney, had stopped to check on the scene (I R.R. at 43). Trooper McWhinney was the only other Trooper to patrol the entire county that night, and there was a lot going on with the local bars being full and the bad weather (I R.R. at 44). There were Sheriff's Deputies on scene, but it was their job to direct traffic in order to protect the accident scene, since the area was at the downside of a small crest in a hill (I R.R. at 48, 49).

Trooper Alvarez continued his investigation; he was able to briefly speak with the Defendant before EMS transported her (I R.R. at 23,24). Defendant told him that the back end of her vehicle started to slide and she lost control (I R.R. at 24). Trooper Alvarez noticed that Defendant had glassy, blood-shot eyes and smelled of alcohol (I R.R. at 23, 24). Defendant also admitted to having one drink earlier in the evening (I R.R. at 24). Paramedics suspected neck, back, and internal injuries; a helicopter was unable to make the location due to the inclement weather

3

(I R.R. at 19, 22, 24). He stated the paramedics then decided to interrupt the interview so they could take her via ambulance to University Hospital which was 38-40 miles away (I R.R. at 24, 32). At this point more than two hours had already elapsed since the accident occurred (I R.R. at 30).

Trooper Alvarez identified the deceased (whom he personally knew) along with the Defendant (I R.R. at 25). He then had to complete the initial assessment of the accident- which took approximately 30 minutes- wait for the justice of the peace to pronounce the deceased dead, inventory the vehicle, and clear the vehicle accident scene. (I R.R. at 25, 26). Trooper Alvarez was in charge of the accident scene and could not leave or stop what he was doing to complete a search warrant (I R.R. at 26, 27). He believed that it would take him approximately 2.5 to 3 hours before he could leave the scene (I R.R. at 27). He also testified that he needed to complete his investigation before he would be able to complete a search warrant with the requisite probable cause information, and he was the only one at the scene with that knowledge (I R.R. at 27, 30, 50, 51). Trooper Alvarez did not believe he could just hand it off to another officer (I R.R. at 30). At the time, Trooper Mata was busy interviewing witnesses, assisting with the vehicle inventory and helping locate the deceased's next of kin (I R.R. at 27). Deputy Savage was able to assist help find the exact location for the next of kin (I R.R. at 27).

4

Trooper Alvarez testified that in looking at the totality of the circumstances, he determined Defendant committed the crime of intoxication manslaughter and he needed to collect a sample of her blood (I R.R. at 29). He testified that "as the more time that goes on, the evidence becomes thinner…and, eventually, I'm going to lose that evidence…you know, her, as we're trained, you need to try to get to that defendant as soon as you can in order to obtain a blood sample, because the faster you get it, the more accurate reading you're going to get" (I R.R. at 30). He stated that Comal County had a no refusal policy in effect on March11, 2012 and there was a judge on call. However, Trooper Alvarez stated that it was in the "baby stage of contacting judges at the wee hours of the night" (I R.R. at 38, 41). Although he stated that It could generally take 30 minutes to an hour and a half to secure a warrant, he also testified that the situation is different when you have a deceased person and an accident scene (I R.R. at 41, 53.).

He testified that because of the weather and time of night coupled with the fact he would have to hand write the warrant and then meet with a judge, it would have taken an additional three hours to secure a warrant (I R.R. at 31, 32). For those reasons, Trooper Alvarez contacted DPS Communications which sent Trooper Zarate to University Hospital in San Antonio to collect a sample of Defendant's blood (I R.R. at 32). Trooper Alvarez asked Trooper Zarate to request a voluntary sample from defendant, but if she refused, to take a mandatory sample

5

since there was a deceased person at the accident scene (I R.R. at 38). A sample of defendant's blood was ultimately taken without a warrant at approximately 4:40 a.m. (I R.R. at51).

At the motion to suppress, Defendant argued that *McNeely* and *Villareal* eliminated the Implied Consent Statute and that where the warrant requirement will not significantly delay getting a blood sample, there is no exception to not securing a search warrant (I R.R. at 8, 9, 12). The State argued that the blood was drawn pursuant to exigent circumstances (I R.R. at 4).

## Summary of the Argument

The facts presented to Trooper Alvarez in the early morning hours of March 11, 2012 constituted exigent circumstances such that obtaining a warrant for Defendant's blood would have led to the substantial destruction of evidence under the totality of the circumstances.

## Standard of Review

Courts review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this review we give "almost total deference to the trial court's determination of historical facts" and review the court's application of search and

6

seizure law *de novo. Guzman v. State,* 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). The reviewing court may not disturb supported findings of fact absent an abuse of discretion. *See Etheridge v. State,* 903 S.W.2d 1, 15 (Tex. Crim. App.1994), *cert. denied* 516 U.S. 920, 116 S.Ct. 314, 133 L.Ed.2d 217 (1995).

### *Villareal* **does not lead to the conclusion that exigent circumstances did not exist in the instant case.**

The trial court concluded that "under the criteria of State of Texas vs. David Villareal, the State did not demonstrate exigent circumstances. (I Supp. CR at 9, 16). At the time the trial court issued its ruling the Court of Criminal Appeals had granted rehearing in the *State of Texas vs. Villareal*. *See State v. Villarreal*, PD-0306-14, 2014 WL 6734178, (Tex. Crim. App. Nov. 26, 2014), *reh'g granted* (Feb. 25, 2015). Notably, *Villareal* very distinctly states that: "Although *McNeely* dealt primarily with exigent circumstances, an exception to the warrant requirement is not at issue in the present case." *Id.* at 9. *Villareal* does not otherwise discuss or give any legal reasoning to the topic of exigent circumstances. See *Id.* and *Burcie v. State,* 08-13-00212-CR, 2015 WL 2342876, at *3 (Tex. App.—El Paso May 14, 2015) (mem. op., not designated for publication), *petition for discretionary review filed* (July 17, 2015) (stating only the exigent circumstances exception was not at issue in *Villarreal).* The State will nevertheless continue with the argument that exigent circumstances existed.

7

**Exigent circumstances are to be reviewed on a case-by-case basis under the totality of the circumstances analysis.**

A warrantless search of the person is reasonable only if it falls within a recognized exception. *Missouri v. McNeely*, 133 S. Ct. 1552, 1558, (2013) (quoting, *e.g., United States v. Robinson,* 414 U.S. 218, 224 (1973)). "One well-recognized exception… applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting: *Kentucky v. King,* 563 U.S. ——, ——, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011) (internal quotation marks and brackets omitted)).

The court in *McNeely* recognized that "a variety of circumstances may give rise to an exigency sufficient to justify a warrantless search" and that "we have also recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." *Id*. at 1558-60. To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, appellate courts look to the totality of circumstances and evaluate the facts on a case-by-case basis. *See id*. This approach applies to warrantless blood draws in driving while intoxicated investigations. *See id.*

The Court in *Mcneely* noted that in *Schmerber* "the warrantless blood test… was nonetheless permissible because the officer might reasonably have believed

that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence." *id*. The Court further observed that in the *Schmerber* case "time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant." *McNeely* then commented that "given *Schmerber's* special facts, we found that it was appropriate for the police to act without a warrant." *Missouri v. McNeely*, 133 S. Ct. 1552, 1560 (2013). The Court then recognized that "regardless of the exact elimination rate, it is sufficient for our purposes to note that because an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *Id.* at 1560-61. The Court noted that there will be some inevitable delay in the time that it takes to transport a defendant to a hospital, and that there are also ways in which jurisdictions may speed up the warrant process with standard form warrants and the use of fax machines and other telecommunication technology. *See id*. at 1562. However, the Court then clarified that:

> We by no means claim that telecommunications innovations have, will, or should eliminate all delay from the warrant-application process. Warrants inevitably take some time for police officers or prosecutors to complete and for magistrate judges to review. Telephonic and electronic warrants may still require officers to follow time-consuming formalities designed to create an adequate record, …and improvements in communications technology do not guarantee

that a magistrate judge will be available when an officer needs a warrant after making a late-night arrest.

*Id*. The Court concluded with the observation that "longer intervals may raise questions about the accuracy of the calculation" and "for that reason, exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id*. at 1563.

In *Garcia v. State* – an opinion from the Fourteenth Court of Appeals with similar facts to the instant case – the State argued exigent circumstances existed when the defendant could not perform field sobriety tests at the scene because he was receiving medical treatment, the trooper had to take time to investigate the traffic fatality at the scene, the defendant's transfer to the hospital was delayed because of Life Flight, the trooper did not develop probable cause until he spoke to appellant at the hospital, and alcohol from the defendant's blood stream was dissipating. *Garcia v. State*, 14-14-00387-CR, 2015 WL 2250895, at *6-8 (Tex. App.—Houston [14th Dist.] May 12, 2015) (not designated for publication), *petition for discretionary review refused* (Sept. 16, 2015). The defendant countered that the trooper could have asked another officer to obtain a warrant and cited to *Douds,* asserting "[t]he relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before

10

drawing a blood sample would significantly undermine the efficacy of a blood alcohol test." *See id.*; *see also Douds v. State* 434 S.W.3d 842, 854 (Tex.App.–Houston [14th Dist.] 2014, pet. granted) (en banc, op. on reh'g). The *Garcia* opinion recognized the distinction that:

> The [*Douds*] court emphasized the fact that the evidence in the case did not mention a warrant at all, nor what the arresting officer knew about the time needed to obtain a warrant. Because the record below reflects Trooper Wyman's knowledge of the requirements for obtaining a warrant, we conclude that *Douds* is distinguishable.

*Id.* at 7. The specific distinguishing factors for the *Garcia* court were that three hours had passed before the trooper developed probable cause and to get a warrant the trooper would have to type up a warrant, locate a judge, and then return to the hospital. *See id.* The trooper in *Garcia* also testified that the warrant process would be complicated and lengthy. *See id.* Ultimately, the court considered the totality of circumstances and concluded exigent circumstances existed that made obtaining a warrant impractical. *See id.*

**Some appellate courts are failing to apply the totality of the circumstances analysis as required by *McNeely*.**

Relatively few cases have found exigent circumstances in DWI cases since McNeely. In *State v Ruiz*, the officer had to investigate an accident scene as well as locate and identify the defendant who had fled. *See State v. Ruiz*, 13-13-00507-CR,

11

2015 WL 5626252, at *5 (Tex. App.—Corpus Christi Aug. 27, 2015, no. pet. h.)(not designated for publication). At the suppression hearing the officer testified it would have taken three hours to secure a warrant, there were only two other officers on duty that night, and to take one off duty to help was not feasible. *See id*. The officer also believed it would be difficult to locate a magistrate and he would have had to drive to the magistrate's house all while blood alcohol evidence was dissipating. *See id*. The opinion quoted *McNeely*, noting that blood alcohol evidence is different from other destruction of evidence cases where police are confronted with a 'now or never' situation because blood alcohol dissipates predictably. *See id*. The opinion also quoted *McNeely*'s totality of the circumstances approach but nevertheless concluded that:

> The State produced no evidence to show that destruction of Ruiz's blood alcohol was imminent, how it was deprived of an opportunity to obtain reliable evidence within a timeframe, or how a more expeditious process was not available to locate a magistrate and obtain a warrant from the magistrate through alternative means such as via telephone rather than physically driving to the magistrate's home. *Id.* at 6.

The dissent in *Ruiz* stressed that *McNeely* requires a totality of the circumstances approach and that there will be situations where exigent circumstances will support a warrantless blood draw. *See id*. Applying the totality of the circumstances approach the dissent believed exigent circumstances existed because it would have

12

taken two to three hours to secure a warrant and removing one of the two officers on duty to help would be impractical. *See id.*

In *State v Martinez* the court found there were no exigent circumstances where the officer testified that there was not a magistrate on duty, the officer would have had to find and wake one up, and then wait for them to travel to the hospital all while evidence of intoxication was being lost. *State v. Martinez*, 13-14-00117-CR, 2015 WL 1957087, at *7 (Tex. App.—Corpus Christi Apr. 30, 2015, no pet.) The state argued that this additional time coupled with the dissipation of alcohol was exigent circumstances. *Id.* The court rejected the State's argument stating:

> The State has not pointed to any circumstances in this case presenting an exigency other than the presence of alcohol in Martinez's blood stream. The time between the initial stop and Johnson's arrival at the hospital, just under two hours, was not overly long, and there is no evidence in the record of how long it might have taken Johnson to apply for a warrant. *Id.*

The court believed this was the exact argument that the Supreme Court rejected in *McNeely*. *See id.*

And then finally in *Cole v State* the court found no exigent circumstances where there was no evidence of the dissipation rate of *methamphetamines*. See *Cole v. State*, 454 S.W.3d 89, 98 (Tex. App.—Texarkana 2014), *petition for discretionary review granted* (Apr. 22, 2015). The trial court found that the following exigent circumstances justified the warrantless blood draw: (1) major

13

intersections had to be closed and traffic rerouted; (2) numerous officers were at the scene, each with a specific job to do, and none could be spared to seek a warrant; (3) due to his role, the investigating officer had to remain at the scene; (4) the magnitude of the accident, i.e., that it involved a death, a fire, a large debris field, and traffic issues; (5) the defendant's health and safety and concern that the hospital could give him additional medications; and (6) the time needed to get the scene cleared. *id*. Citing *Mcneely*, the court acknowledged that an officer can take steps to secure a warrant while the defendant is being transported to the hospital and technological advances since *Schmerber* can help speed up the warrant process. *See id.* at 99. The court also believed the the exigent circumstances analysis should not focus on the delay of the accident investigation but rather on the delay to the warrant process. *See id* at 100. The court further emphasized that "To ensure that the exigencies of the situation make dispensing with the constitutional requirement of a warrant imperative, courts must focus on whether the State showed that police could not reasonably obtain a warrant, not on whether it showed how severe the accident was." *Id*. The court then hypothesized that exigent circumstances might arise where "a lone officer discovers an apparently intoxicated driver during a midnight traffic stop not involving any accident, if the delay necessary to obtain a warrant could be substantial because there is no magistrate available". but not where "an officer's investigation of a serious

14

accident lasts for an hour, where the availability of another officer 15 minutes into the investigation, or the presence of medical personnel to treat injuries, could significantly reduce the delay necessary to obtain a warrant." *See id.* at 100-01. Additionally, in concluding that there were no exigent circumstances the court noted that "there were about one dozen police officers on the scene in this case, and this accident happened as one group of officers' shift was ending and another group's was beginning" And "There [was] no indication that officers not on the scene were unavailable to help obtain a warrant." *Id*. at 103.

**Other Texas cases dealing with exigency are distinguishable from the facts in the instant case.**

In *Garcia v State* the Fourth Court of Appeals ruled it could not find exigent circumstances where "the testimony sheds no light on whether the officers were presented with exigent circumstances". *Garcia v. State*, 04-14-00002-CR, 2015 WL 5042143, at *4 (Tex. App.—San Antonio Aug. 26, 2015, no. pet. h.)(not designated for publication). During trial, none of the officers involved were asked about exigent circumstances to justify securing Garcia's blood without a warrant. *Id*. quoting *Weems,* the court reasoned "the record ... does not reflect other factors that would be relevant under the totality of the circumstances, including 'procedures in place for obtaining a warrant or the availability of a magistrate judge' and 'the practical problems of obtaining a warrant within a time frame that

still preserves the opportunity to obtain reliable evidence.' " 434 S.W.3d at 666 (citing *McNeely,* 133 S.Ct. at 1568).

In *State v Esher* officers were dispatched to an accident scene and were able to conduct field sobriety tests on the defendant. *State v. Esher*, 05-14-00694-CR, 2015 WL 4527715, at *5 (Tex. App.—Dallas July 27, 2015, no. pet. h.)(not designated for publication). When the defendant refused to provide a sample of breath, she was transported to the hospital for a mandatory blood draw. *Id*. The court ruled that the state did not present exigent circumstances because the only testimony presented at the suppression hearing was the potential dissipation of alcohol from the defendant's blood stream. *See id*. The court sited to *McNeely* and concluded that "the State [did] not identify other factors that would suggest the officers faced an emergency or unusual delay in securing a warrant. *See McNeely,* 133 S.Ct. at 1567." *Id*.

In *Pimentel v State* the court cited *McNeely* for the proposition that "the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant. *McNeely,* 133 S.Ct. at 1568." *State v. Pimentel*, 08-13-00081-CR, 2015 WL 3878079, at *3 (Tex. App.—El Paso June 23, 2015, no pet.)(not designated for publication). The court noted that the record was completely devoid of important facts such as how long the defendant remained at the accident scene, how long it took to transport

16

him to the hospital, what time his blood was drawn, or how long it typically takes to obtain a search warrant in cases like this. *See id*. "Because the State failed to establish that the delay in waiting for a warrant would significantly undermine the efficacy of the search, it failed to prove that exigent circumstances justified the warrantless search of Pimentel's person." *Id*.

In two similar cases the courts found no exigent circumstances where the officer specifically testified there were no exigent circumstances. *See Huff v. State*, 04-13-00891-CR, 2015 WL 1731236, at *15 (Tex. App.—San Antonio Apr. 8, 2015), petition for discretionary review filed (July 9, 2015) and *State v. Tercero*, 01-14-00120-CR, 2015 WL 1544519, at *1 (Tex. App.—Houston [1st Dist.] Apr. 2, 2015), reh'g overruled (June 30, 2015), petition for discretionary review filed (July 7, 2015). In *Huff* the trial court had stated there are "full-time 24/7 magistrates available, trust me, I've signed many warrants at 3:00 o'clock in the morning at my house." *Id*. When specifically asked the officer in *Huff* admitted there were no exigent circumstances. *See id*. The trial court also specifically found that it believed the officer did not secure a warrant because he believed he did not have to. *See id*.

Then in a case involving a major accident the court ruled an accident investigation by itself is not an exigent circumstance where the officer testified he had time to secure a warrant. *See Evans v. State*, 14-13-00642-CR, 2015 WL

545702, at *5-6 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015), *petition for discretionary review filed* (Apr. 21, 2015)(not designated for publication). In *Evans* "the record [did] not reflect any facts to support the State's argument that obtaining a warrant would have significantly delayed the blood draw process."*Id*. There were also two Fort Bend County deputies and one DPS trooper at the scene assisting in the investigation who could have helped secure a warrant. *Id*. The court found the fact that there was not a magistrate on call 24 hours a day unpersuasive . *See id*.

In another vehicle accident case the court found no exigent circumstances where the record did not demonstrate how the accident investigation made it impractical to get a warrant. *See Bowman v. State*, 05-13-01349-CR, 2015 WL 557205, at *11 (Tex. App.—Dallas Feb. 10, 2015, no pet.)(not designated for publication). Here the court, citing *Mcneely*, found that the officer had remote technology to access form warrants and such technology was relevant to assessing exigency. *See id*. Just like in *Evans* the *Bowman* court found there is no per se exigency rule for accident investigations. *See id.* and *Bowman*. Quoting *Douds*, the court noted "[t]he State should be responsible for asking officers who handle accidents to explain the demands of a particular investigation that made it impractical for police to obtain a warrant before any blood alcohol evidence dissipated." *Id*. (quoting 434 S.W.3d at 854). The court ultimately found that the record did not demonstrate that the accident investigation described gave rise to

18

any such demands." *Id*. Specifically, the court noted "that the record before us [does not] contain any evidence that the extra time that would necessarily have been expended to obtain a warrant in this case threatened that opportunity". *Id.*

Another court did not find exigent circumstances when it found the officer relied solely on Chapter 724 of the Transportation Code. *See State v. Rodriguez*, 13-13-00335-CR, 2015 WL 3799353, at *7 (Tex. App.—Corpus Christi June 18, 2015), *petition for discretionary review filed* (July 2, 2015) (not designated for publication). *Rodriguez* found that "there [was] no evidence that Officer Jordan could not have taken steps to obtain a warrant because he never even considered obtaining one." *Id*. The court quoted *McNeely* and emphasized "that if an officer can take steps to secure a warrant while the suspect is being transported to a hospital by another officer, there would be no plausible justification for an exception to the warrant requirement. *McNeely,* 133 S.Ct. at 1561." *Id*.

**Trooper Alvarez acted lawfully when he seized a sample of Defendant's blood without a search warrant because exigent circumstances existed given the totality of the circumstances analysis in *McNeely*.**

*McNeely* did not abolish exigent circumstances in DWI blood draw cases but rather limited its ruling specifically to the fact that the dissipation of alcohol in a DWI suspects blood stream *by itself* it not a per se exigent circumstance. *See generally McNeely,* 133 S. Ct. 1552. It appears some appellate courts in Texas

19

have not taken the common-sense approach of looking to the totality of circumstances on a case-by-case basis. *See Ruiz*, 2015 WL 5626252 at *5; *Martinez,* 2015 WL 1957087 at *7; *Cole*, 454 S.W.3d at 98. *McNeely* noted there will be some inevitable delay in transporting a defendant to a hospital and that technology and form warrants can speed up the process. *See* 133 S. Ct. at 1562*. McNeely* did not go onto to say that these factors will completely negate exigency. *See id*.

Looking at the facts in the instant cases (and keeping in mind that the trial court made specific findings that Trooper Alvarez was credible and the facts he testified to were true), the following facts stand out: (1) Trooper Alvarez arrived to an accident scene with a deceased victim at approximately 1:04 A.M., (2) when he arrived the defendant was still hanging upside down in the driver's seat with paramedics attending to her, (3) Trooper Alvarez was only briefly able to speak with her in the back of an ambulance before she was taken to University Hospital 40 miles away for her injuries, (4) more than two hours had elapsed since the accident occurred and Trooper Alvarez believed it would take two and a half to three hours to complete his investigation and to secure a warrant, (5) there was not another officer available to help with the warrant process, and (6) blood alcohol evidence necessary to the crime of intoxication manslaughter was being metabolized and destroyed.

20

The facts in the instant case are distinguishable from other cases holding there were no exigent circumstances. *See Garcia v. State*, 2015 WL 5042143 at *4; *Esher*, 2015 WL 4527715 at *5; *Pimentel*, 2015 WL 3878079 at *3; *Huff v. State*, 2015 WL 1731236 at *15; and *Tercero*, 2015 WL 1544519 at *1. Trooper Alvarez testified that if he did not get a sample of the defendant's blood quickly, the results would be less accurate or eventually be lost altogether. *See Ruiz*, 2015 WL 5626252 at *5. Trooper Alvarez also testified to the facts as they were that evening, and specifically how they would prevent him from obtaining a warrant in time to prevent the loss of evidence. *Compare with supra.* Despite accident investigations not being a per se exigency, they are still a factor to consider in the totality of the circumstances in assessing exigency. *See Burks v. State*, 454 S.W.3d 705, 708-09 (Tex. App.—Fort Worth 2015), *petition for discretionary review filed* (Mar. 13, 2015); *Evans*, 2015 WL 545702 at *5, *6; *Bowman*, 2015 WL 557205 at *11. Trooper Alvarez testified that this was not the typical situation where he could get a warrant in 30 to 90 minutes due to the death, accident scene, and weather.

The facts in the instant case are analogues to those presented in the 14th District's opinion in *Garcia*. *See* 2015 WL 2250895 at *7. Like the Trooper in *Garcia*, Trooper Alvarez was faced with an accident scene and fatality he had to investigate, several hours passed before probable cause could be determined, and

21

the warrant process would be lengthy and complicated. Applying the same standard in *Garcia* and *McNeely* it would have been impractical for Trooper Alvarez to obtain a warrant that evening. *See id.; see also McNeely,* 133 S. Ct. 1552. This is the exact situation the Supreme Court contemplated in *McNeely* where "a significant delay in testing will negatively affect the probative value of the results." *See McNeely,* 133 S. Ct. at 1560-61. Because "longer intervals may raise questions about the accuracy of the calculation" Trooper Alvarez was acting lawfully per the exigent circumstances exception to the warrant requirement when he ordered the seizure of a sample of the defendant's blood where more than two hours had passed before he began his investigation and the warrant process would take an additional two and a half to three hours. *See id.* at 1563. Given the potential of five hours passing since the time of the crime of intoxication manslaughter being committed, not only was it impractical for Trooper Alvarez to try and obtain a warrant that evening but it would have flown in the face of *McNeely* and the exigent circumstances doctrine.

Despite the fact that Trooper Alvarez did not explicitly use the phrase "exigent circumstances," his testimony clearly indicated he believed there were exigent circumstances. The trial court found that Trooper Alvarez was credible, and the facts were as Alvarez believed them to be. Furthermore, even an officer's testimony that he believed his search was valid under *one* theory of law would not

preclude an appellate court from relying *another* valid theory within the record. *See Nickerson v State*, 645 S.W.2d 888, 891 (Tex. App.—Dallas 1983), *aff'd*, 660 S.W.2d 825 (Tex. Crim. App. 1983). "Just as the appellate court may look at more than just the evidence on the motion to suppress to uphold a search, similarly an appellate court may look beyond the subjective statements of the officer to find the probable cause and exigent circumstances to justify a search." *Id.* In this case, the State clearly presented the exigent circumstances exception to the trial court at the hearing.

This Court should give almost total deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 88–89. Notably, the factual determination in this case was actually in the State's favor – the trial court found that Trooper Alvarez's testimony on the totality of the facts and circumstances was true. *See also Jefferson County Drainage Dist. No. 6 v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 960 (Tex. App.—Beaumont 1994), *writ denied* (Jan. 12, 1995) ("Under well-established decisional precedent, any conflict between the original findings and the amended findings are resolved definitely in favor of the later findings"). Accordingly, this Court's resolution of the issue in this case – the application of search and seizure law to the facts found to be true – will be *de novo*. *Guzman*, 955 S.W.2d at 88–89. Because the totality of the

circumstances in the instant case demonstrate exigency, this Court should reverse the trial court's order suppressing the evidence.

**Prayer**

Wherefore, premises considered, Appellee prays that this Honorable Court of Appeals reverse the trial court's order suppressing the blood evidence. Alternatively, the State prays that this Honorable Court remand this case for reconsideration of the motion to suppress – including a determination of whether the facts of the case constituted exigent circumstances – in light of The Court of Criminal Appeals' rehearing in *Villareal,* upon which the trial court relied.

Jennifer Tharp
Criminal District Attorney

By

<u>/s/ Daniel Palmitier</u>
**Daniel Palmitier**
SBN: 24062934
Assistant District Attorney
150 N. Seguin Avenue, Ste. #307
New Braunfels, Texas 78130
(830) 221-1300
Fax (830) 608-2008
E-mail: palmid@co.comal.tx.us
Attorney for the State

24

## Certificate of Service

I, Daniel Palmitier, attorney for the State of Texas, Appellant, hereby certify that a true and correct copy of this Brief for the State has been delivered to Appellee FRANCES ANITA ROBINSON'S attorney of record in this matter:

Mr. Charles Sullivan
csullivan@lawcsullivan.com
308 Campbell Dr.
Canyon Lake, TX  78133
*Lead Attorney for Appellee on Appeal*

By electronically sending it through efile.txcourts.gov service, this 23rd day of October, 2015.

/s/ Daniel Palmitier
**Daniel Palmitier**

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4(i)(2)(B) and Rule 9.4(i)(3) of the Texas Rules of Appellate procedure that the instant brief is computer-generated using Microsoft Word and said computer program has identified that there are 6,207 words within the portions of this brief required to be counted by Rule 9.4(i)(1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally-spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

/s/ Daniel Palmitier
**Daniel Palmitier**